WATER PIPE EXTENSION, BUREAU OF ENGINEERING, Laborers Local 1092, Plaintiff-Appellant, v. ILLINOIS LOCAL LABOR RELATIONS BOARD *et al.*, Defendant-Appellee.

First District (5th Division)   No. 1—91—2057

Opinion filed August 20, 1993.

Erbacci, Syracuse & Cerone, Ltd., of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Solomon, and Joan Flynn, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Thomas Edstrom, of AFSCME, Council 31, AFL-CIO, of Chicago, for appellee American Federation of State, County and Municipal Employees Union.

Roland W. Burris, Attorney General, of Springfield (Jerald Post, Assistant Attorney General, of Chicago, of counsel), for other appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

This appeal involves a union representation dispute between Water Pipe Extension, Bureau of Engineering, Laborers Local 1092 (Local 1092) and the American Federation of State, County and Municipal Employees Union, Council 31 (AFSCME) over 12 female City of Chicago (City) employees. After unsuccessfully filing a grievance against the City under its collective bargaining agreement, Local 1092 brought a unit clarification petition. The Executive Director of the Local Labor Relations Board (Director) dismissed the petition as untimely and the Local Labor Relations Board (Board) affirmed. Local 1092 now appeals the Board's dismissal of its petition. For the reasons set forth below, we affirm.

The underlying union representation dispute in this case was precipitated by a Federal class action lawsuit filed in 1974 by the National Organization for Women on behalf of female clerical workers employed by the City. In this suit, plaintiff alleged that these female clerical employees, among them "District Clerks" in the City's Water

and Sewer Department, were being discriminated against because they were being paid less than their male counterparts. In 1983, as part of the consent decree which settled that suit, the City created the job title of "Assignment Clerk." Pursuant to the consent decree, the 12 female former district clerks who are the subject of this appeal voluntarily transferred into the assignment clerk position in which position they received back pay, additional pension contributions and higher wages. With respect to 10 of the clerks, the transfer was completed in 1984, and for the two clerks it was completed prior to 1987. After their transfer, these employees performed the same work as when they were classified as district clerks.

In 1984, Local 1092 was recognized as the representative of a bargaining unit encompassing certain titles in the Chicago Water and Sewer Department including the job title of "District Clerk." This title was listed as being within Local 1092's bargaining unit in the formal recognition agreement and in two successive bargaining agreements effective from February 13, 1986, through December 31, 1991.

In 1984, AFSCME was certified by election as the representative of unit I, which was the administrative and clerical employees unit, which covered the job title of "Assignment Clerk." While Local 1092 challenged the City's authority to hold that election, a challenge which it lost through a dismissal of its complaint (see *City of Chicago v. State & Municipal Teamsters* (1984), 127 Ill. App. 3d 328, 468 N.E.2d 1268), it never sought to directly represent that new job title. AFSCME subsequently negotiated two successive collective bargaining agreements, effective between February 13, 1986, and December 31, 1991. In both of these agreements, the job title of "Assignment Clerk" was included in AFSCME's bargaining unit and the district clerk job title was excluded from that unit.

On January 1, 1988, the 12 clerks who are the subject of this appeal were again reclassified, this time to the job title "Clerk IIIs." This new job title was within AFSCME's bargaining unit under the provisions of AFSCME's collective bargaining agreement with the City.

It is unclear when Local 1092 first became aware or should have been aware of the employees' reclassification to assignment clerks. There is no question, however, that by September 1988 it was fully aware of the employees' reclassification.

On September 28, 1988, Local 1092 filed a grievance on behalf of the district clerks seeking the return of the clerks to its bargaining unit, alleging that the City had violated its collective bargaining agreement with the local. On November 29, 1989, AFSCME filed

charges with the AFL-CIO, alleging that Local 1092 was improperly "raiding" its unit under the AFL-CIO constitution. On December 21, 1990, an arbitrator ruled that the employees in question were dues-paying members of AFSCME's bargaining unit and had not timely contested their reclassification to clerk IIIs. In rendering his award, the arbitrator also ruled that the City did not improperly establish the assignment clerk position or violate the collective bargaining agreement by transferring the district clerks into that job title, and subsequently denied the grievance.

On January 9, 1991, Local 1092 filed a petition for amendment or clarification of unit before the Illinois Local Labor Relations Board pursuant to the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*) and the Rules and Regulations of the Illinois Labor Relations Boards (80 Ill. Adm. Code §1210.170 (1991)). In this petition, Local 1092 sought to restore to its bargaining unit the 12 district clerks who were initially reclassified into the title of "Assignment Clerk" and who were at that time classified as clerk IIIs and in a bargaining unit represented by AFSCME. The Executive Director of the Illinois Local Labor Relations Board dismissed the petitioner's action on April 10, 1991, finding that Local 1092 had waived its right to clarify its unit by failing to promptly exercise that right. Local 1092 appealed and the Illinois Local Labor Relations Board affirmed the Director's decision. In so doing, the Board noted that Local 1092 had knowledge of its former members' reclassification no later than September 1988 when it filed its grievance at which time it had already negotiated two successive contracts with the City. The Board determined that by waiting until January 1991 to file its unit clarification petition, Local 1092 waived its right to do so through this process.

Local 1092 filed a petition for direct administrative review by the appellate court pursuant to section 9(i) of the Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1609(i)) and Illinois Supreme Court Rule 335 (134 Ill. 2d R. 335).

Opinion

On appeal, Local 1092 argues that the Board erred by dismissing its petition for unit clarification on the alleged grounds that the local failed to exercise "due diligence" in filing its petition which resulted in the untimeliness of the petition. Local 1092 contends that the Board acted contrary to established law and in an arbitrary manner because it failed to expressly consider and take into account certain

mitigating factors before concluding that the unit clarification petition was time barred.

We first discuss the appropriate standard of review. AFSCME argues that the applicable standard is whether the Board's decision was against the manifest weight of the evidence. (Citing *County of Menard v. Illinois State Labor Relations Board* (1990), 202 Ill. App. 3d 878, 560 N.E.2d 1236; *Agans v. Edgar* (1986), 142 Ill. App. 3d 1087, 492 N.E.2d 929.) We note that although the manifest weight standard is the correct one to review factual findings made by the Board, the facts of this case are not in dispute. It is undisputed that Local 1092 did not file a unit clarification petition until over two years after it admittedly had knowledge of the representational problem. Moreover, it is undisputed as to when the district clerks transferred into the assignment clerk classification. Rather, the key question before us on review is the correctness of the Board's interpretation of its own rules and regulations governing unit clarification procedures, particularly those governing timeliness.

The Illinois Supreme Court has followed the policy that an administrative agency's interpretation of its standards and regulations is accorded deference as "courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise." (*Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 153, 447 N.E.2d 295; *Salaried Employees v. Illinois Local Labor Relations Board* (1990), 202 Ill. App. 3d 1013, 560 N.E.2d 926.) As a result, an agency's construction of its rules is entitled to respectful consideration and deference by courts unless clearly erroneous, arbitrary, or unreasonable. (*Illinois Federation of Teachers v. Board of Trustees* (1989), 191 Ill. App. 3d 769, 548 N.E.2d 64; *Phillips v. Hall* (1983), 113 Ill. App. 3d 409, 447 N.E.2d 418.) This policy is consistent with the agency's inherent authority and wide latitude to adopt regulations reasonably necessary to perform its statutory duty. *Chemed Corp. v. State* (1989), 186 Ill. App. 3d 402, 542 N.E.2d 492; see also *Decatur Federation of Teachers v. Illinois Educational Labor Relations Board* (1990), 199 Ill. App. 3d 190, 197, 556 N.E.2d 780 (reviewing courts "may not interfere with the discretionary authority vested in an administrative agency unless that authority is exercised in an arbitrary or capricious manner").

The Illinois Public Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1601 *et seq.*) makes no specific provision for unit clarification petitions. Section 1210.170(a) of the Illinois Administrative Code, however, provides that "[a]n exclusive representative or an employer may file a petition to clarify or amend an existing bargaining unit." (See

80 Ill. Admin. Code §1210.170(a) (1991).) This section then sets forth the procedures which must be followed when seeking such clarification. The regulations, however, do not explicitly establish a time limit in which a unit clarification petition must be filed.

Local 1092 argues that in determining whether "due diligence" has been exercised in those instances courts have considered factors other than the mere passage of time, including the reason for the delay, the prejudice to the parties, the conduct of the parties and the desire to reach a just result. Taking into account these additional factors, Local 1092 argues that the Board erred in dismissing its petition. First, it asserts that the City, by failing to advise it of the creation of the assignment clerk position, and AFSCME, by charging that Local 1092 was improperly "raiding" its unit, contributed to its delay in bringing the petition. Local 1092 next alleges that the delay in filing the clarification petition was reasonable because it was pursuing a grievance through the procedures established in its collective bargaining agreement with the City at the time at issue. Additionally, Local 1092 claims that neither the City nor AFSCME has been prejudiced by the delay in the filing of the petition.

We disagree with Local 1092's position. There is ample administrative agency case law supporting the Board's decision. In point is the Illinois State Labor Relations Board's decision of *Illinois Departments of Central Management Services & Public Health* (1985), 2 Pub. Employee Rep. (Ill.) par. 2005, No. 5—UC—52 (ISLRB November 21, 1985), in which the Board dismissed a unit clarification petition. There, the Board initially noted that the "only arguable change warranting the use of the unit clarification procedure occurred in August 1983." (*Illinois Departments of Central Management Services & Public Health,* 2 Pub. Employee Rep. (Ill.) par. 2005, at VIII—19.) It then determined that the petitioning union had "waived any right it may have had to accrete these employees into its existing unit without a vote" because it did not file its clarification petition until August 1985, two years after the "arguable change" warranting the petition. *Illinois Departments of Central Management Services & Public Health,* 2 Pub. Employee Rep. (Ill.) par. 2005, at VIII—20.

The Board's determination that Local 1092's petition was untimely is further supported by decisions of other labor boards. (See *East Richland Educational Association v. Illinois Educational Labor Relations Board* (1988), 173 Ill. App. 3d 878, 528 N.E.2d 751 (cases from other States are persuasive in construing the Illinois Public Labor Relations Act).) In *In re Atlantic Community College* (1984), 11 Pub. Employee Rep. (N.J.) par. 16015, the New Jersey Public Em-

ployer Relations Commission dismissed a unit clarification petition because the union in question had not sought clarification in a timely fashion. The commission found dispositive the fact that the union did not file its clarification petition until eleven months after it was aware of the need for clarification.

Likewise, in *In re State of New Jersey, Public Employer & Communications Workers* (1989), 15 Pub. Employee Rep. (N.J.) par. 20269, the commission determined that where a job title exists outside a bargaining unit for a significant period of time, the majority representative waives its right to clarify its unit with respect to those titles. It explained that a clarification petition should be filed "promptly after a change in circumstances occurs" and that where the classifications being sought have existed for several contract periods, a clarification petition may not be used to enlarge the unit absent recent changes in the unit. *In re State of New Jersey, Public Employer & Communications Workers* (1989), 15 Pub. Employee Rep. (N.J.) par. 20269, at 658.

In *Illinois Departments of Central Management Services & Public Health*, 2 Pub. Employee Rep. (Ill.) par. 2005, and *In re Atlantic Community College* (1984), 11 Pub. Employee Rep. (N.J.) par. 16015, the respective clarification petitions were considered time barred when they were filed two years (*Illinois Departments of Central Management Services*) and 11 months (*In re Atlantic Community College*) *after the events asserted as a basis for clarification* had taken place. In this case, the "arguable change(s)" occurred between 1984 and 1987 when the employees transferred job titles. Local 1092 failed to file its unit clarification petition until January 1991. Consequently, there was a span of four to seven years between the time of the "arguable change" and that of the filing of the petition. Moreover, Local 1092 admittedly knew of the problem more than two years prior to its filing of the unit clarification petition. In such an instance, we cannot say that the Board's actions were arbitrary in denying the union's petition for clarification as untimely. *Illinois Departments of Central Management Services & Public Health*, 2 Pub. Employee Rep. (Ill.) par. 2005; *In re Atlantic Community College*, 11 Pub. Employee Rep. (N.J.) par. 16015; see also *Batesville Casket Co.* (1987), 283 N.L.R.B. 795 (deciding that unit clarification procedure was not proper method of challenging current placement of individuals when petition was brought to challenge a classification which had been in place for a substantial period of time).

Local 1092 attempts to distinguish *Illinois Departments of Central Management Services* and *Atlantic Community College*, arguing

that unlike the petitioners in those cases who failed to act upon learning of the representation question, Local 1092 took immediate action to correct the problem by filing a grievance under its collective bargaining agreement.

Local 1092 has failed, however, to provide us with any law, regulation, or provision which indicates that the grievance procedure in its collective bargaining agreement with the City was the appropriate method for resolving this dispute. Nor has the local identified any potential legal barriers which would have prevented it from bringing a unit clarification petition earlier than it did. Local 1092 admittedly had knowledge of the representational change in 1988. Instead of immediately seeking to address this problem through a unit clarification petition, however, it chose to file a grievance. This choice was not mandated by law, but was a strategic one.

In *City of Evanston v. Illinois State Labor Relations Board* (1992), 227 Ill. App. 3d 980, 592 N.E.2d 415, the court rejected the City's argument that the Board should have dismissed the unit clarification petition before it and deferred to a grievance then pending before an arbitrator. In so doing, the court stated:

> "The City has cited no provision of the Act, Board regulation or provision of the parties' collective bargaining agreement which would *prohibit* the Board from entertaining the Union's unit clarification petition or otherwise *require* the Board to defer to arbitration. This City in essence asks this court to substitute our judgment for that of the Board on the issue of whether the parties' dispute is more appropriately resolved by arbitration than by unit clarification proceeding. This we will not do." (Emphasis in original.) (*City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d at 969.)

The court determined that this deferential course of action was proper even when the unit clarification petition related to the interpretation of provisions of the collective bargaining agreement. *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d at 970-71.

In this case, Local 1092's failure to file a unit clarification petition sooner prevented the Board from having the opportunity to decide the appropriate method to resolve the dispute. If Local 1092's position was accepted, a party would be allowed to pursue each potential avenue in succession with impunity. Such a result would relegate the unit clarification petition to a last resort, always available after the party had failed in obtaining relief from other avenues. This course is inconsistent with the policy of encouraging matters involving unit clarifica-

tion to go before the Labor Board, which has particular expertise in determining the appropriate bargaining unit. See *National Labor Relations Board v. Magna Corp.* (5th Cir. 1984), 734 F.2d 1057 (deferral of unit clarification proceeding is ill advised because such proceedings involve application of statutory policy and issues of unit appropriateness which is particularly in the expertise of the National Labor Relations Board); *Mercury Marine Division of Brunswick Corp. & District No. 10* (1981), 254 N.L.R.B. 1120; see also *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d at 971.

Local 1092 argues that the Board's use of the term "due diligence" carries with it echoes of that term's use in the area of civil procedure. In this respect, Local 1092 points to the fact that in determining whether "due diligence" has been exercised under section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) and Illinois Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)) courts have considered factors other than the mere passage of time. See, *e.g., Segal v. Sacco* (1990), 136 Ill. 2d 282, 555 N.E.2d 719 (listing factors which courts consider in determining whether cause should be dismissed pursuant to Illinois Supreme Court Rule 103(b), including: the activities of the plaintiff, special circumstances, and defendant's knowledge of the pendency of the suit); *Dudek, Inc. v. Shred Pax Corp.* (1990), 196 Ill. App. 3d 720, 554 N.E.2d 1002 (reasonable excuse needed to establish "due diligence" under section 2—1401); *Hopkins v. Holt* (1990), 194 Ill. App. 3d 788, 551 N.E.2d 400 (considering whether party was prejudiced in determining whether judgment should be vacated pursuant to section 2—1401); *Vrozos v. Sarantopoulos* (1990), 195 Ill. App. 3d 610, 552 N.E.2d 1093 (to receive relief under section 2—1401 a party must show, among other things, that its actions were reasonable and not negligent under the circumstances); *In re Application of the County Treasurer & Ex-Officio County Collector* (1989), 185 Ill. App. 3d 789, 793, 542 N.E.2d 397 (default judgment can be vacated where "unfair, unjust or unconscionable circumstances are present").

There is no reason to think, however, that the Board's use of that term parallels the requirements under the Code of Civil Procedure. Rather, a timely filed unit clarification petition promotes the agency's own goals of settling representational disputes in an efficient and timely manner by putting such disputes before the Board, which has particular expertise in these matters. See *National Labor Relations Board v. Magna Corp.*, 734 F.2d at 1063 (and cases cited therein discussing expertise of labor board and corresponding policy favoring its resolution of such disputes); *State of New Jersey, Public Employer &*

*Communications Workers* (1989), 15 Pub. Employee Rep. (N.J.) par. 20269 (emphasizing need to bring clarification petition promptly after change in circumstances occurs).

In this instance, we understand that the Board could well be reluctant to permit a unit clarification procedure to reshuffle the bargaining units when the span of time has been considerable and the employees have become solidly rooted in another bargaining unit. (See *City of Chicago* (1986), 2 Pub. Employee Rep. (Ill.) par. 3014, at IX—50, Nos. L—RC—86—02, L—UC—86—03, L—UC—86—13 (Illinois Local Labor Relations Board June 2, 1986) (When a union clarification petition is used to add "employees to an existing unit, the device operates as a substitute for the regular representation process. Obviously the substitute should not be employed where circumstances call for the real thing"); *State of New Jersey, Public Employer & Communications Workers*, 15 Pub. Employee Rep. (N.J.) par. 20269.) Regardless of when Local 1092 knew of the employees' membership in AFSCME, the fact remains that those employees had been dues-paying members of AFSCME for between four and six years when the unit clarification petition was eventually filed and have been members of AFSCME for between six and eight years at the time of this appeal.

Therefore, in light of the fact that the Board's decision is consistent with past decisions of the Illinois State Labor Relations Board and the purposes of the Illinois Public Labor Relations Act, and is supported by decisions from other jurisdictions, we cannot say that the Board erred in dismissing Local 1092's petition as time barred.

For the foregoing reasons, the judgment of the Illinois Local Labor Relations Board is affirmed.

Judgment affirmed.

MURRAY and COUSINS, JJ., concur.