No. 1-05-2323

| | | |
|---|---|---|
| NILES TOWNSHIP HIGH SCHOOL DISTRICT 219, COOK COUNTY, ILLINOIS, | ) ) ) | Petition for Review of an Order of the Illinois Educational |
| Petitioner-Appellant, | ) ) | Labor Relations Board |
| v. | ) ) | No. 2003-UC-0007-C |
| ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD; and NILES TOWNSHIP SUPPORT STAFF, LOCAL 1274, IFT/AFT, AFL-CIO, | ) ) ) ) | |
| Respondents-Appellees. | ) | |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

In May 2003, petitioner Niles Township High School District 219 (District) filed a unit clarification petition with respondent Illinois Educational Labor Relations Board (IELRB) seeking clarification of a bargaining unit represented by respondent Niles Township Support Staff, Local 1274, IFT-AFT, AFL-CIO (Union.) This bargaining unit of the District's employees included all secretaries and clerical workers, custodial and maintenance employees and pupil security employees whose positions required 600 hours or more of work during the fiscal school year. Among the classifications of employees excluded from this bargaining unit, and from all bargaining units under the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/2(b) (West 2004)), were

"confidential employees" as defined in section 2(n) of the Act (115 ILCS 5/2(n) (West 2004)).[1]  In its petition and accompanying position statement, the District sought the removal of three technology positions (Systems and Networking Coordinator, Programmer Analyst, and WWW Communications Technician) from the bargaining unit because, in the District's view, the employees filling these positions were confidential employees.  In October 2004, an administrative law judge (ALJ) issued a decision and order (without an evidentiary hearing) recommending that the District's petition be dismissed.  According to the ALJ, the District's petition was untimely filed and the employees in question were not confidential employees.  In the ALJ's view, "the unit clarification procedure was not the appropriate vehicle to remove the petitioned-for titles from the existing bargaining unit."  In June 2005, the IELRB issued an opinion and order (also without an evidentiary hearing) affirming the ALJ's recommended decision and order.  The IELRB agreed with the ALJ that the District's petition was untimely and that the unit clarification procedure was not appropriately employed in this

---

[1]Section 2(n) provides:

" 'Confidential employee' means an employee, who (i) in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine and effectuate management policies with regard to labor relations or who (ii) in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's collective bargaining policies."  115 ILCS 5/2(n) (West 2004).

instance. The District appeals directly to this court (115 ILCS 5/16(a) (West 2004)) from the IELRB's opinion and order.

BACKGROUND

The District filed its unit clarification petition and supporting documents on May 30, 2003. According to the District's position statement, the employees who filled the three positions in question, together with certain supervisors and managers who were already excluded from the bargaining unit, had responsibility for maintaining and operating the District's computer network. These Information Systems (IS) employees were the administrators of the computer network and, as such, had unlimited access to employees' workstations and files stored on the network. The District further alleged that its top-level administrators, including the District's superintendent, business manager, and assistant superintendent for human resources, all stored collective bargaining information on the computer network. This information included District bargaining positions and proposals that had not previously been disclosed to the Union. The District argued that, if the IS employees in question were allowed to remain in the bargaining unit, this would create "an unreasonable risk that the [District's] collective bargaining policies and positions will be prematurely disclosed to the [Union]." The District contended that these employees were confidential employees within the meaning of the Act and should therefore be removed from the Union's bargaining unit.

In support of this position, the District pointed to *Woodland Community Unit School District 5*, 16 Pub. Employee Rep. (Ill.) par. 1026, No. 992 UC 0005 2 (IELRB February 1, 2000) (hereinafter 16 Pub. Employee Rep. (Ill.) par. 1026). In *Woodland*, an ALJ concluded that the school district's technology coordinator position was confidential within the meaning of the Act "because the

3

employee has access to confidential information relating to the District's collective bargaining policies." *Woodland*, 16 Pub. Employee Rep. (Ill.) par. 1026. The IELRB in *Woodland* affirmed the ALJ's decision.

Eleven months after the District's petition was filed in the case at bar, the ALJ issued an order requiring the District to show cause why its petition should not be dismissed. According to the ALJ, the District's unit clarification petition was "not the appropriate vehicle" by which to remove the job classifications at issue from the bargaining unit. The ALJ's order, which was issued on April 30, 2004, stated that unit clarification petitions are appropriate only in three narrow circumstances: (1) there is a newly created job classification entailing job functions that are similar to those of classifications covered by the existing bargaining unit; (2) the job functions of an existing classification have been altered substantially since the unit was certified, creating genuine doubt as to whether the classification should remain in, or be excluded from, the existing unit; or (3) there has been a change in statutory or case law that affects the bargaining rights of employees. In the ALJ's view, the job classifications at issue were not newly created, nor had the functions of these classifications been substantially altered since the unit was certified "some time prior to 1999." With regard to the third circumstance, the ALJ stated: "The statutory and case law governing the bargaining rights of the petitioned-for employees has not changed insofar as is relevant herein."

In its response to this order, the District argued that, contrary to the ALJ's conclusions, both the second and third circumstances applied in this case. According to the District, the job functions of the classifications in question were changed in May 2001 when the District adopted a new computer-use policy that allowed IS employees "to monitor and investigate the use of the District's

computers and electronic network by its employees." The District noted that the Union had challenged the enforcement of some of the policy's new provisions, but the parties had settled the matter, and the District continued (through the IS employees) to routinely monitor network and workstation use and to investigate employees when necessary. In the District's view, these changes in the computer use policy "substantially altered" the job classifications in question. The District also argued that the IELRB's 2000 decision in *Woodland* constituted a change in relevant case law that occurred after the bargaining unit was certified.

On October 15, 2004, the ALJ issued a recommended decision and order concluding, *sua sponte*, that the District's petition was untimely filed. This order also asserted, as had the show-cause order, that the District's unit clarification petition "was not the appropriate vehicle to remove the petitioned-for titles from the existing bargaining unit." The ALJ recommended that the District's petition be dismissed "in its entirety." In support of the untimeliness finding, the ALJ noted that the alleged substantial alteration in the IS employees' job functions took place in May 2001, when the District adopted a new computer-use policy, but the District did not file its unit clarification petition until May 30, 2003, "over 24 months later." The ALJ stated: "It is axiomatic that a party waives its right to use of the unit clarification petition when it fails to do so in a timely fashion." The ALJ came to a similar conclusion with regard to the alleged change in relevant case law. The ALJ noted that *Woodland*, on which the District relied, was decided in February 2000, more than three years before the District's petition was filed. Accordingly, the District's petition was "untimely under the change in law exception as well."

5

In its response to the recommended decision and order, the District took exception to the ALJ's assertion that the relevant changes in the IS employees' duties took place in May 2001, when the District adopted its new computer-use policy. The District also disagreed with the ALJ's finding that the petition was untimely. In the District's view, this untimeliness issue was raised by the ALJ *sua sponte.*

The District noted that, as was stated in its response to the ALJ's show-cause order, the Union challenged the enforcement of some of the computer-use policy's new provisions, and the parties subsequently bargained and settled their issues. An agreement allegedly was reached on or around December 2002, and ratification by the District's board of education took place on January 6, 2003. According to the District, the IS employees' duties changed after January 6, 2003. The District alleged that, prior to this point, it had agreed "not to hold any employee liable for damages related to use of the [District's] computers and/or computer network." However, after January 6, 2003, the "IS employees began to actively enforce the [computer-use policy] with disciplinary consequences, and the role of the IS employees changed from occasionally being directed by management to look into certain problems already identified by management, to actively and independently searching for and investigating infractions and aiding and assisting the school administration in disciplining employees." In the District's view, the IS employees' duties changed after January 6, 2003. The District noted that its petition was filed on May 30, 2003, less than five months later. The District argued that its petition was not untimely filed.

6

On June 16, 2005, the IELRB issued its opinion and order affirming the recommended decision and order of the ALJ. No evidentiary hearing was conducted. The District's petition was dismissed.

The IELRB initially noted that the District, in its response to the ALJ's recommended decision and order, had included additional facts that were not available to the ALJ. These facts formed the support for the District's assertion that the IS employees' duties had changed after January 6, 2003. The IELRB refused to consider these facts because they were not presented during the investigation of the case or to the ALJ.

The IELRB agreed with the ALJ that the District's petition was untimely filed. With regard to the alleged substantial alteration in the IS employees' duties, the IELRB noted, as did the ALJ, that this change occurred in May 2001, two years prior to the filing of the District's unit clarification petition. The IELRB also noted that the only arguably relevant change in statutory or case law came in *Woodland*, which was decided more than three years before the District filed its petition. The IELRB then identified an additional circumstance in which a unit clarification petition is appropriate, over and above the three circumstances identified by the ALJ. These three former circumstances all involved change of one type or another, but the additional circumstance identified by the IELRB dealt with the removal from a bargaining unit of a statutorily excluded employee whose job duties had *not* changed. In the IELRB's view, this is what the District was attempting to do in the case at bar. However, the IELRB concluded that, in this instance as well, the District's petition was untimely filed. In reaching this conclusion, the IELRB announced a new rule: "[U]nit clarification petitions seeking to exclude allegedly statutorily excluded employees from a bargaining unit must be filed

within a reasonable period of time after the unit begins to include allegedly statutorily excluded employees."

The establishment of this new rule required the IELRB to overrule one of its previous decisions, *Community High School District No. 218*, 2 Pub. Employee Rep. (Ill.) par. 1087 No. 84 UC 00011 C (IELRB June 24, 1986) (hereinafter 2 Pub. Employee Rep. (Ill.) par. 1087). In *District No. 218*, as the IELRB noted in its opinion in the case at bar, the unit clarification procedure was used to remove certain individuals from a bargaining unit in which they had long been included. The IELRB in *District No. 218* stated: "The Act requires the exclusion of confidential employees regardless of their prior inclusion in a bargaining unit." *District No. 218*, 2 Pub. Employee Rep. (Ill.) par. 1087. *District No. 218* also quoted from *The Washington Post Co.*, 254 NLRB 168 (January 14, 1981), which stated:

> " ' While it may be that certain of the positions sought to be excluded by a unit clarification petition have long been included under previous contracts, and the job duties of those positions have remained unchanged, nonetheless, if it can be shown that the persons in such positions meet the test for establishing supervisory, managerial or confidential status, we are compelled to exclude them.' " *District No. 218*, 2 Pub. Employee Rep. (Ill.) par. 1087, quoting *The Washington Post Co.*, 254 NLRB at 169.

The IELRB in the case at bar decided to "revisit" *District No. 218* based on "policy considerations." The IELRB noted the Act's statutory policy of promoting stability in collective bargaining relationships, and concluded that, if *District No. 218* were followed and petitions seeking to remove allegedly statutorily excluded employees from a bargaining unit were allowed to be filed at any time

8

this would be inconsistent with this policy. According to the IELRB, such a permissive practice would allow relationships between educational employees and their employers to be disrupted at any time, and would undermine the collective bargaining process. The IELRB concluded, on the other hand, that if a time limit were set on the filing of such petitions, this would promote "'orderly and constructive relationships' between educational employees and their employers and [would] effectively resolve[d] disputes over the unit placement of the allegedly statutorily excluded employees."

Applying its newly established time limit in the case at bar, the IELRB asserted that the bargaining unit began to include allegedly statutorily excluded employees in May 2001, "when the District adopted provisions in its computer use policy that allowed the employees at issue to monitor and investigate the use of the District's computers and computer network by its employees." However, the District did not file its unit clarification petition until two years later. According to the IELRB, "[t]his was not within a reasonable period of time after the unit began to include allegedly statutorily excluded employees."

The IELRB concluded its opinion and order by stating:

> "Analyzed under any of the circumstances in which the unit clarification process is appropriate, the District's unit clarification petition was not timely filed. We conclude that the unit clarification procedure was not appropriately employed."

This appeal followed.

ANALYSIS

9

"An administrative agency's findings on questions of fact are deemed to be *prima facie* true and correct and will not be reversed unless they are against the manifest weight of the evidence." *One Equal Voice v. Illinois Educational Labor Relations Board*, 333 Ill. App. 3d 1036, 1041, 777 N.E.2d 648 (2002). "[A] reviewing court may not interfere with the discretionary authority vested in an administrative body unless that authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence." *LaSalle National Bank v. City Suites, Inc.*, 325 Ill. App. 3d 780, 786, 758 N.E.2d 382 (2001). "The agency's determination on purely legal questions is reviewed *de novo* and is not binding on a reviewing court." *One Equal Voice*, 333 Ill. App. 3d at 1041.

## I. ALJ's Untimeliness Ruling

Before this court, the District first argues that the IELRB's refusal to consider the additional evidence it submitted in its exceptions in response to the ALJ's *sua sponte* arguments in his recommended decision was contrary to law. Our review of this issue is *de novo*.

The District argues that it was not given notice of, nor an opportunity to defend and argue the issue of, the timeliness of its petition, since the ALJ did not pose this issue in its rule to show cause order, but instead raised only the question whether its petition was an "appropriate vehicle" to exclude the IS employees. The District further argues that it was prejudiced by the IELRB's refusal to consider the additional facts, and the ALJ's *sua sponte* untimeliness ruling resulted in "a miscarriage of justice."

Neither the Union nor the IELRB responds to the District's argument that the ALJ *sua sponte* ruled that its petition was untimely and failed to give it notice and an opportunity to be heard. Instead, they take the position, pursuant to the "waiver rule," that the ALJ properly refused to consider the District's additional facts submitted in its exceptions.

"Administrative proceedings are governed by fundamental principles and requirements of due process of law. [Citation.] 'An Illinois court has a duty, under the Administrative Review Act, to ensure that due process was afforded in the administrative hearing.' [Citation.]" *General Service Employees Union, Local 73 v. Illinois Educational Labor Relations Board*, 285 Ill. App. 3d 507, 515, 673 N.E.2d 1084 (1996). " 'Due process of law requires that a party be accorded procedural fairness, *i.e.,* given notice and an opportunity to be heard.' " *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 62, 803 N.E.2d 541 (2004).

In the case at bar, we first note that, pursuant to section 1110.160(c) of the IELRB's rules and regulations, where a unit clarification petition "presents unresolved questions of material fact, the Executive Director shall set it for a hearing." 80 Ill. Adm. Code §1110.160(c), as amended by 28 Ill. Reg. 7938 (eff. May 28, 2004); *Support Council of District 39, Wilmette Local 1274 v. Educational Labor Relations Board,* No. 1-05-2687, slip op. at 2 (June 26, 2006). Apparently, the ALJ issued his rule to show cause order because he found there was a question of material fact regarding the timeliness of the District's petition, *i.e.*, the date when the IS employees' job duties changed. Unfortunately, the ALJ failed to communicate this "question" in his order and, rather, only communicated the question of whether the petition was an "appropriate vehicle." Instead of issuing a rule to show cause order, the ALJ should have set an evidentiary hearing date on the petition

11

pursuant to section 1110.160(c), since an unresolved question of material fact existed. We find that the ALJ's failure to do so ultimately resulted in a violation of the District's procedural due process rights.

More specifically, in his rule to show cause order, the ALJ directed the District to show cause why its petition should not be dismissed, based solely on the issue of whether the petition was an "appropriate vehicle" to remove the positions in question from the existing unit. According to the ALJ's order, a unit clarification petition is an appropriate vehicle if it pertains to a newly created job classification, an existing classification in which an employee's job functions have been substantially altered since certification, or a change in statutory or case law. The District responded that it was an appropriate vehicle. Without a hearing, the ALJ subsequently issued its recommended decision, ruling, *inter alia*, that "the cited alteration as the basis for the [District's] petition renders it untimely," using May 2001 as the date of change in the IS employees' job duties.

Clearly, the District had no notice that the ALJ was contemplating dismissal of its petition on an untimeliness basis and the District had no opportunity to be heard or make arguments as to the issue. That this untimeliness was in fact a separate issue, not identified in the ALJ's rule to show cause order, is readily apparent from the IELRB's later recognition of the timeliness of the petition as a "separate" issue from the issue of whether the petition was an "appropriate vehicle," which was the sole question identified by the ALJ in its rule to show cause order. See *Gredell,* 346 Ill. App. 3d at 63 (trial court's dismissal of the plaintiff's complaint violated procedural due process where the plaintiff also asserted the discovery rule tolled the statute of limitations, and the court did not address the applicability of the discovery rule); *Peterson v. Randhava,* 313 Ill. App. 3d 1, 13, 729 N.E.2d 75

(2000) ("By its very nature, a *sua sponte* ruling deprives a party of notice and an opportunity to raise objections because the court acts on its own and without any warning").

Thereafter, the IELRB refused to consider the additional facts the District submitted in its exceptions regarding the date the IS employees' job duties were substantially altered, based on the IELRB's determination that these facts had not been presented in the investigation or to the ALJ and, therefore, in effect, were waived. As a result, we find that the IELRB's determination, that these additional facts were waived, was a continuation of the deprivation of the District's procedural due process rights, since the additional facts submitted by the District were in response to the ALJ's improper *sua sponte* untimeliness ruling and clearly could have been presented at an evidentiary hearing on the petition, had the ALJ properly conducted one. *Cf. General Service Employees Union*, 285 Ill. App. 3d at 517 (the union was "deprived of the opportunity to put forth evidence supporting a section 14(a)(3) violation [discriminatory discharge claim] because the executive director precluded the Union from alleging such a violation," and the IELRB then "proceeded to evaluate the Union's case based upon a section 14(a)(3) analysis").

In light of our disposition on this issue, we reject the Union's and the IELRB's waiver arguments. Moreover, "the waiver doctrine operates as a limitation on the parties, not on the courts." *Mellon v. Coffelt*, 313 Ill. App. 3d 619, 626, 730 N.E.2d 102 (2000).

We reverse and remand this cause for an evidentiary hearing, with directions that the IELRB consider the additional facts submitted in the District's exceptions. Since we are reversing and remanding, it is unnecessary to address (1) the issue of whether the IELRB's decision regarding whether the IS employees should be excluded as confidential employees within the meaning of

sections 2(n)(I) and 2(n)(ii) of the Act was correct, and (2) the District's argument that the IELRB's ruling that the IS employees' job duties had not been substantially changed based on the May 2001 date was erroneous. Both of these rulings must be reexamined by the IELRB on remand based upon a consideration of the additional facts submitted by the District in its exceptions.

## II. IELRB's Overruling of *District No. 218* - Untimeliness Ruling

The District also argues that this court should reverse the IELRB's decision overruling *District No. 218* because to let it stand would, in fact, contravene the very "important policy considerations" upon which the IELRB relied in stating that its decision was "rational" and "not unprecedented." More specifically, the District argues that setting a reasonable time limit in which a unit clarification petition must be filed to exclude statutorily excluded employees would not achieve unit stability, would not "prevent employees from having divided loyalties between Union and management," and would not maintain an equal playing field for bargaining negotiations. The District maintains that the IELRB's overruling of *District No. 218* will mean that union members who are confidential employees within the meaning of section 2(n) of the Act will have advance knowledge of management's confidential labor relations strategies, documentation and other information during the collective bargaining process. In the District's view, this would not promote bargaining unit stability.

The Union does not respond to the District's argument in its brief. The IELRB argues that it was correct in setting a reasonable time limit for filing a unit clarification petition regarding statutorily excluded employees. The IELRB maintains that if this court concludes that there should be no deadline for such petitions, it would be overruling both the IELRB and this court's decision in

*Water Pipe Extension, Bureau of Engineering v. Illinois Local Labor Relations Board*, 252 Ill. App. 3d 932, 625 N.E.2d 733 (1993), in which the court held that a unit clarification petition was untimely filed. In the IELRB's view, allowing the petitions to be filed at any time would be inconsistent with the Act's stated purpose of promoting "orderly and constructive relationships between all educational employees and their employers" and would allow such relationships to be disrupted at any time. The IELRB contends, on the other hand, that requiring the petitions to be filed within a reasonable time, after the relevant change in circumstances, "merely requires the petitioner to act in an expeditious manner and does not prevent the removal of statutorily excluded employees." The District counters that "[i]t is completely unreasonable, and against legislative intent, to find that an employer who fails to expeditiously file a unit clarification petition to exclude specific employment positions [is] to be banned forever from excluding them short of further negotiation with the Union."

"To ensure a party receives due process, ' "[a]n agency changing its course must apply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." ' [Citation.]" *General Services Employees Union,* 285 Ill. App. 3d at 515.

While a court's review of an agency's statutory interpretation is *de novo*, the agency's interpretation should receive deference because it stems from the agency's expertise and experience. *General Services Employees Union*, 285 Ill. App. 3d at 515. "[C]ourts may not interfere with the discretionary authority of an agency unless it is exercised in an arbitrary and capricious manner or is against the manifest weight of the evidence." *General Services Employees Union*, 285 Ill. App. 3d at 515. As stated by the *General Services Employees Union* court:

15

"Agency action is arbitrary and capricious if the agency contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an explanation which is so implausible that it runs contrary to agency expertise. [Citation.] 'While an agency is not required to adhere to a certain policy or practice forever, sudden and unexplained changes have often been considered arbitrary. [Citation.] The standard is one of rationality.' [Citation.]" *General Services Employees Union,* 285 Ill. App. 3d at 515-16.

Prior to the IELRB's decision in the instant case, no time limit existed for the filing of a unit clarification petition to exclude statutorily excluded employees from a bargaining unit. *Community High School District No. 218*, 2 Pub. Employee Rep. (Ill.) par. 1087. More specifically, in *District No. 218*, the union had sought, *inter alia*, to include in a secretarial bargaining unit four secretaries' positions which the district had excluded from the unit as confidential employees under the Act. The secretaries at issue had long been included in the unit prior to that time. The hearing officer granted the union's petition, holding that the Act forbade the district from changing the composition of a bargaining unit recognized by it prior to the Act's January 1, 1984, effective date, and concluding that the secretaries in question were "grandfathered" along with the rest of the historical unit. The hearing officer further concluded that whether or not these individuals might fall within one of the statutory exclusions was immaterial.

In construing the meaning of section 7(a) of the Act, the IELRB in *District No. 218* stated that to accept the hearing officer's interpretation of the section "would negate the express legislative policy

to exclude confidential employees from coverage under the Act. The legislature clearly intended to exclude such individuals" and "did so for sound policy reasons," *i.e.,* "[i]n terms of 'confidential employees,' it was felt that an employer should not be compelled to bargain with individuals who receive advance information concerning its collective bargaining strategy or labor relations policies." *District No. 218,* 2 Pub. Employee Rep. (Ill.) par. 1087. The IELRB also stated that a unit that includes confidential employees is repugnant to the Act and "requires the exclusion of confidential employees regardless of their prior inclusion in a bargaining unit." *District No. 218,* 2 Pub. Employee Rep. (Ill.) par. 1087.

Recently, in *Department of Central Management Services v. Illinois Labor Relations Board*, 364 Ill. App. 3d 1028, 848 N.E.2d 118 (2006) (*CMS*), this court addressed the issue of when a unit clarification petition, seeking to exclude confidential employees, may be filed. In *CMS*, the Illinois State Labor Relations Board (Board) dismissed stipulated unit clarification petitions, involved in two separate cases, filed by the Department of Central Management Services (Department) and the American Federation of State, County, and Municipal Employees (AFSCME), which sought to exclude four employees from their bargaining units. The Board determined that, in both cases, the unit clarification petitions did not fall under any of four situations permitting the filing of the petitions, *i.e.*, a substantial change in the duties and functions of an existing job title, the inadvertent overlooking of employees by the parties when the unit was created, changes in statutory or case law, and a newly created job classification.

On appeal, this court, while noting that CMS' petition did not fall within any of the four limited circumstances under which a party may file such a petition, concluded that "under the unique

circumstances that exist in these cases--that is, where allegedly confidential employees were improperly included in a bargaining unit–the filing of a unit-clarification petition is appropriate." *CMS*, 364 Ill. App. 3d at 1033. This court in *CMS* pointed to section 3(n) of the Illinois Public Labor Relations Act (Public Labor Relations Act) (5 ILCS 315/3(n) (West 2004)), which excludes confidential employees from the definition of employees to which the Public Labor Relations Act applies. The reason for this exclusion, the court noted, was explained in *Chief Judge of the Circuit Court of Cook County v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508 (1992), which stated:

> " 'The purpose of excluding confidential employees is to keep employees from "having their loyalties divided" between their employer and the bargaining unit which represents them. The employer expects confidentiality in labor[-]relations matters but the union may seek access to the confidential materials to gain a bargaining advantage.' " *CMS*, 364 Ill. App. 3d at 1033-34, quoting *Chief Judge of the Circuit Court*, 153 Ill. 2d at 523.

This court in *CMS* stated: "Given the importance of confidentiality in labor-relations matters, to protect both the employers and the confidential employees (who could find themselves torn between loyalty to their employer and their bargaining unit), we hold that a unit-clarification petition may appropriately be used to sever confidential employees from a bargaining unit." *CMS*, 364 Ill. App. 3d at 1034.

In addressing the Board's additional argument that one of the petitions was untimely filed, this court in *CMS* stated:

"As our supreme court recognized in *Chief Judge of the Circuit Court of Cook County,* [citation], the State has an interest in keeping confidential employees out of bargaining units. If, at any point, the State determines that a confidential employee is a member of a bargaining unit, the State must be allowed to file a unit-clarification petition to remove that confidential employee. *The fact that a confidential employee was improperly placed in a bargaining unit and the issue of his placement was not raised for several years should not dictate that he forever be allowed to stay in the bargaining unit. We thus conclude that the State can file a unit-clarification petition to remove a confidential employee from a bargaining unit at any time.*" (Emphasis added.) *CMS*, 364 Ill. App. 3d at 1035-36.

In so concluding, this court stated that its decision in *Water Pipe Extension* did not require a different result because that case involved neither confidential employees nor the "unique circumstances" in the case before the *CMS* court.[2] *CMS*, 364 Ill. App. 3d at 1036. Accordingly, the court reversed and

---

[2]For similar reasons, *Water Pipe Extension* is inapposite to the case at bar. The dispute in *Water Pipe Extension* was over which of two unions, Local 1092 or the AFSCME, had the right to represent the employees in question. The court affirmed the dismissal of Local 1092's unit clarification petition for untimeliness. The result was that the employees were represented by the AFSCME. In the case at bar, as in CMS, the situation is different. In both of these cases, the dismissal of the petitions for untimeliness could result in statutorily excluded employees (confidential employees) remaining in a bargaining unit, in contravention of the Act's express prohibition (115 ILCS 5/2(b) (West 2004)).

remanded the consolidated cases to the Board for an evidentiary hearing to determine if any of the employees named in the unit clarification petitions were confidential employees under section 3(c) of the Public Labor Relations Act. *CMS*, 364 Ill. App. 3d at 1036.

In the instant case, the IELRB overruled its former decision in *District No. 218*, stating, *inter alia*, that allowing unit clarification petitions to remove statutorily excluded employees at any time: is inconsistent with the statutory policy of promoting stability in collective bargaining relationships, and permits the relationships between educational employers and employees to be disrupted at any time, thereby undermining the collective bargaining process. On the other hand, according to the IELRB, setting a reasonable time limit for the filing of petitions seeking to remove allegedly statutorily excluded employees from a bargaining unit promotes orderly and constructive relationships between employers and employees and effectively resolves disputes over the unit placement of the allegedly statutorily excluded employees. The IELRB also stated: "Our decision to set a time limit on the filing of unit clarification petitions seeking to remove allegedly statutorily excluded employees from a bargaining unit agrees with a ruling of the Illinois State Labor Relations Board ('ISLRB'). In *County of Fulton, et al.,* 6 PERI 2024 (ISLRB 1990), the ISLRB indicated, in response to an employer's argument that a unit clarification petition was always appropriate to exclude a confidential employee from a stipulated unit, that unit clarification was only appropriate where its standards were met."

With respect to the IELRB's reliance on *County of Fulton,* we note that the "rule" relied on by it, that unit clarification petitions to exclude confidential employees were only appropriate if the ISLRB's standards were met, was only mentioned in a footnote. Furthermore, the two cases cited by the ISLRB in *County of Fulton* in support of this statement, *City of Burbank*, 2 Pub. Employee Rep. (Ill.) par. 2036, Nos. S UC 15. S UC 19 (ISLRB July 30, 1986) and *State of Illinois, Department of Central Management Services,* 1 Pub. Employee Rep. (Ill.) par. 2014, Nos. S UC 6, S UC 8 (ISLRB July 17, 1985), while discussing standards for the appropriateness of a unit clarification petition, did not involve a timeliness issue as to when the petitions should be filed.

We find the rationale in *CMS*, in allowing a unit clarification petition seeking to remove statutorily excluded employees at any time, persuasive. In the case at bar, notwithstanding all of the stated reasons by the IELRB to set a reasonable time limit in filing a unit clarification petition to remove statutorily excluded confidential employees, the fact remains that, if the petition is found to be untimely filed, keeping the employees in a position where they have access to confidential collective bargaining information gives a union an unfair advantage over an employer. Clearly, a time limit for the filing of a petition to remove allegedly confidential employees, which results in the inability to remove them until a future time, if at all, contravenes the legislature's express policy to exclude them. Moreover, we fail to see how keeping an otherwise statutorily confidential employee in a bargaining unit conforms with the Act's purposes and policies to promote stability, orderly and constructive relationships between employees and employers, and effectively resolve disputes. .

We disagree with the Union, as argued in its subsequently filed motion to this court to cite additional authority, that *CMS* is inapplicable to the instant case because *CMS* involved stipulated

21

petitions, whereas here a "unilateral" petition is involved. While this is so, the *CMS* case clearly indicates that "the State can file a unit-clarification petition to remove a confidential employee from a bargaining unit at any time." *CMS*, 364 Ill. App. 3d at 1036. Thus, the State would not need the assent of a union to file such a petition and, moreover, clearly there is no timeliness consideration connected to such a filing. We further find *CMS* persuasive, given that section 2(n) of the Act and section 3(c) of the Public Labor Relations Act, defining "confidential employee," are virtually identical (115 ILCS 5/2(n) (West 2004); 5 ILCS 315/3(c) (West 2004)); and section 2(b) of the Act and section 3(n) of the Public Labor Relations Act both exclude "confidential employees" from bargaining units (115 ILCS 5/2(b) (West 2004); 5 ILCS 315/3(n) (West 2004)). In addition, the purposes for these exclusions are essentially the same. *Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board*, 165 Ill. App. 3d 41, 60, 518 N.E.2d 713 (1987) ("[T]he section 2(n) exclusion [of the Act] goes to maintaining the *status quo* in educational labor negotiations by removing from a unit otherwise-covered employees who have the potential for obtaining advance knowledge of confidential labor relations information, thereby upsetting the normal balance of negotiations"); *Chief Judge of the Circuit Court of Cook County,* 153 Ill. 2d at 523 ("The purpose of [the Public Labor Relations Act in] excluding confidential employees is to keep employees from 'having their loyalties divided' between their employer and the bargaining unit which represents them. The employer expects confidentiality in labor relations matters but the union may seek access to the confidential materials to gain a bargaining advantage").

In conclusion, although deference is due to the IELRB in interpreting its policies, rules, and regulations, we find that the IELRB's determination of untimeliness, setting a reasonable time limit for filing a unit clarification petition seeking to remove statutorily excluded confidential employees, and overruling *District No. 218* were arbitrary and capricious, and we reverse.

For the reasons stated, we reverse and remand this cause for an evidentiary hearing, with directions.

Reversed and remanded, with directions.

McBride, P.J. and Cahill, J., concur.