# Illinois Official Reports

## Appellate Court

*American Federation of State, County & Municipal Employees, Council 31 v. Illinois Labor Relations Board, State Panel*, **2018 IL App (1st) 172476**

| | |
|---|---|
| Appellate Court Caption | AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, COUNCIL 31, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, Respondents. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-2476 |
| Filed<br>Rehearing denied | December 14, 2018<br>January 14, 2019 |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, Nos. S-UC-16-032, S-UC-16-033, S-UC-16-034. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Gail E. Mrozowski, of Cornfield and Feldman LLP, of Chicago, for petitioner.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Christina T. Hansen, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board, State Panel. |

Thomas S. Bradley, Mark W. Bennett, and David A. Moore, Special Assistant Attorneys General, of Laner Muchin Ltd., of Chicago, for other respondent.

Panel JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1 This is an administrative review action brought by the American Federation of State, County and Municipal Employees, Council 31 (Union) against the Illinois Labor Relations Board, State Panel (Board) and the Department of Central Management Services (Employer), as representative for the Department of Employment Security (IDES) and the Department of Children and Family Services (DCFS), seeking a review of the Board's decision on three unit clarification petitions.[1] For the following reasons, we affirm the Board's decision to permit unit clarification petitions for vacant positions, affirm the Board's holding that the petitions were procedurally appropriate pursuant to section 1210.170(a) of the Board's rules (80 Ill. Adm. Code 1210.170(a) (2003)), vacate the Board's holding that the unit clarification petitions were procedurally appropriate on the grounds that they involved alleged *managerial employees*, and affirm the Board's finding that the positions at issue are managerial.

¶ 2 BACKGROUND

¶ 3 The Union is the certified representative of the job positions at issue. This appeal involves two job positions. The first position is known as the Public Service Administrator (PSA) Option 8L position. That position is employed by DCFS.[2] The second position is known as the PSA Option 1 position, and that position is employed by a variety of state agencies, including IDES.[3] On January 22, 2016, the Employer filed three unit clarification petitions with the Board involving these two positions. The petitions sought to exclude two PSA Option 8L positions employed by DCFS and one PSA Option 1 position employed by IDES, from the Union's collective bargaining unit. The Employer's petitions alleged that the positions should be excluded from the Union's bargaining unit on the grounds that they are managerial or supervisory positions and are therefore statutorily excluded from collective bargaining in

[1]A unit clarification petition may be filed by a union representative or an employer seeking to clarify or amend an employee's existing bargaining unit status. 80 Ill. Adm. Code 1210.170(a) (2003).
[2]The PSA Option 8L positions within DCFS are more commonly referred to as "downstate supervisory regional counsels." To avoid confusion in this opinion, we will refer to the positions as "PSA Option 8L."
[3]The PSA Option 1 position within IDES is more commonly referred to as "migrant and seasonal farm workers manager, Spanish speaking position." To avoid confusion in this opinion, we will refer to the position as "PSA Option 1."

accordance with the Illinois Public Labor Relations Act (Act). 5 ILCS 315/3(n), 6(a) (West 2016) (managerial employees are excluded from collective bargaining). The petitions alleged that the positions were newly created positions. A position description for each position was attached to the Employer's petitions. The positions were vacant at the time the Employer filed its petitions seeking clarification.

¶ 4    The Union filed an objection to the petitions and sought their dismissal, contending that they were not procedurally appropriate because they did not fall into one of the recognized circumstances for bringing a clarification petition as set forth in the Board's rules. The Union's objection also claimed that the Employer's petitions were premature because the positions at issue were vacant. The Union's objection alternatively argued that that the position descriptions attached to the petitions were insufficient to show that the positions are managerial or supervisory, which would then cause the positions to be excluded from the collective bargaining unit.

¶ 5    On March 11, 2016, after an investigation, an administrative law judge (ALJ) issued a recommended decision and order (the first RDO) dismissing the Employer's petitions. The ALJ reasoned that because the positions were vacant, a hearing "would not adequately resolve" the matter of their bargaining unit placement. The ALJ further determined that it was unnecessary to address the Union's other arguments. The Employer then filed timely exceptions before the Board, objecting to the first RDO.

¶ 6    On September 2, 2016, the Board reversed the first RDO and remanded the petitions back to the ALJ for a hearing on the merits. In its order, the Board acknowledged that it had "previously and historically declined to hold hearings on vacant positions as a matter of policy," but found "compelling reasons to modify that policy." The Board further stated:

"The policy we applied in the past is rooted in the belief and expectation that because a position is vacant there necessarily will be an inability to adduce evidence that sufficiently defines the actual duties of the prospective employee who eventually holds the position in question. However, the Employer in this case has provided an abundance of information that very clearly and specifically defines the duties that prospective employees will be expected to perform. We find that the evidence presented by the Employer during investigation raises a question of fact as to whether the positions' anticipated duties would be sufficient to sustain the exclusion, and it offers some challenge to the assumption that underlies our historical policy."

The Board recognized that this policy modification would require a shift toward relying on position descriptions as evidence of a position's duties but noted that the United States Court of Appeals for the Seventh Circuit has repeatedly held it appropriate to rely on position descriptions in that context. The Board also noted that its "now-modified approach retains the safeguard that the Union could use the unit clarification process to address a situation where the Employer does not deliver on the promised duties that it relied upon to establish the exclusion."

¶ 7    On remand, the ALJ held a hearing on whether the petitions were appropriately filed pursuant to the Board's rules and whether the positions at issue are managerial or supervisory within the meaning of the Act.[4] During the hearing, the Employer presented testimony from

[4]The two PSA Option 8L positions had been filled and were therefore no longer vacant by the time of the hearing.

two witnesses: (1) Sheila Riley, deputy general counsel downstate for DCFS, who testified about the duties of the PSA Option 8L positions as utilized by DCFS, and (2) Jeanette Okulinski, human resources manager for IDES, who testified about the duties of the PSA Option 1 position as utilized by IDES.

¶ 8      Riley testified that in August 2015, she requested two new PSA Option 8L positions "that would be able to do the same thing as the preexisting PSA 8Ls."[5] She explained that the PSA Option 8L positions' duties include, *inter alia*, drafting pleadings, preparing witnesses, and advocating for DCFS in juvenile proceedings, probate proceedings, and administrative hearings. The PSA Option 8L positions are responsible for performing legal screenings and making recommendations to DCFS on child placement issues. The employees in these positions also make recommendations to DCFS staff on legal issues.

¶ 9      Next, Okulinski testified that the PSA Option 1 position had previously been classified as an "Executive II" position. It was temporarily occupied by an individual who had an Executive II designation but who was not authorized to exercise supervisory authority, including disciplining other employees. Upon that individual's retirement, the Executive II position was eliminated and the new PSA Option 1 position was created. Okulinski was responsible for writing the job description for the new position based on the eliminated Executive II position. She testified that the new position has "a higher level of duties." The PSA Option 1 position is intended to "oversee" the migrant and seasonal farm workers program and is expected to supervise the staff members responsible for implementing the program.

¶ 10      Following the hearing, the ALJ issued an RDO (the second RDO), holding that the petitions were procedurally appropriate. The ALJ explained that the Board's rules permit unit clarification petitions when "a significant change takes place in statutory or case law that affects the bargaining rights of employees," citing to section 1210.170(a)(3) of the Board's rules (80 Ill. Adm. Code 1210.170(a)(3) (2003)), and that "the Board, in remanding this case for hearing, made a substantial change in the law that raises questions regarding the bargaining rights of employees who will hold the at issue positions in the future." The second RDO therefore held that the petitions were procedurally appropriate in accordance with the Board's rules. The second RDO additionally held that the unit clarification petition regarding the PSA Option 1 position was procedurally appropriate based upon section 1210.170(a)(1) of the Board's rules (80 Ill. Adm. Code 1210.170(a)(1) (2003)) because "the Employer recently made substantial changes to the duties and functions of that position."

¶ 11      However, the ALJ rejected an argument by the Employer that the petitions were also procedurally appropriate on the grounds that they sought to remove alleged managerial positions from the bargaining unit. The ALJ noted the recognized circumstances set forth in the Board's rules for filing petitions and that a petition involving an alleged managerial employee is outside of those circumstances. The second RDO stated: "although the Employer couches its argument in terms of timeliness, the question of a petition's timeliness is distinct from the question of whether unit clarification is the appropriate vehicle by which to remove the identified persons from the bargaining unit."

---

[5]The preexisting PSA Option 8L positions are excluded from the collective bargaining unit.

¶ 12    The second RDO further held that the PSA Option 8L positions and the PSA Option 1 position are all managerial as "a matter of fact" within the meaning of the Act.[6] For the PSA Option 8L positions, the second RDO noted that the positions' duties include making effective recommendations on major policy, which may be considered managerial. Additionally, the second RDO highlighted the PSA Option 8L positions' "most significant tasks" of performing legal screenings and making recommendations to DCFS on allegations of abuse and neglect. The second RDO noted that these functions are "vital to achieving the DCFS's mission" and allow "the agency to pursue meritorious cases." As for the PSA Option 1 position, the second RDO held it to be managerial because the employee will predominantly be "engaged in executive and managerial functions," such as running the migrant and seasonal farm workers program and formulating policies and program objectives.

¶ 13    The Union filed timely exceptions before the Board as to the findings of the second RDO, additionally challenging the Board's September 2, 2016, order holding that petitions may be filed for vacant positions. The Employer filed cross-exceptions, challenging the second RDO's finding that the petitions at issue were not procedurally appropriate on the grounds that they sought to remove alleged managerial positions.

¶ 14    Following oral arguments, the Board issued its final decision on October 17, 2017. In its order, the Board identified three issues raised by the exceptions and cross-exceptions: (1) whether the Board should reconsider its September 2, 2016, order regarding vacant positions, (2) whether it is procedurally proper for the Board to consider the unit clarification petitions, and (3) whether the positions at issue are managerial or supervisory within the meaning of the Act.

¶ 15    First, the Board rejected the Union's challenge to its September 2, 2016, order regarding vacant positions. The Board reasoned that job descriptions have evidentiary value in defining the duties of prospective employees. The Board also noted that the Union would retain the safeguard of filing a unit clarification petition at a later time, after the position is no longer vacant, to seek inclusion of a position in the bargaining unit where the duties the employee performs differ from those the Employer relied upon to establish the exclusion. Further, the Board found that in the case before it, the duties of the positions at issue "are more than merely speculative," as the Employer provided additional evidence about the positions' job duties, including information about similar positions that already existed.

¶ 16    Second, the Board determined that the unit clarification petitions in this case were procedurally appropriate pursuant to its rules and adopted the ALJ's reasoning in the second RDO. Specifically, that the Board's September 2, 2016, order created a "substantial change" in law and that the PSA Option 1 position also had substantial changes in its duties.

¶ 17    The Board also agreed with the Employer that the petitions were procedurally appropriate on grounds other than those set forth in the Board's rules and case law. The Board relied upon case law from this court, which held that unit clarification petitions were appropriately filed to remove *confidential employees*[7] from a bargaining unit. See *State v. State*, 364 Ill. App. 3d

_____

[6]The second RDO found that the PSA Option 8L positions are not managerial as a matter *of law* because "there is no statutory apparatus that clothes them with the powers of the Director of DCFS and they do not perform the functions of judicial law clerks."

[7]However, we note that a confidential employee is not the same as a managerial employee. The Act defines a confidential employee as "an employee who, in the regular course of his or her duties, assists

- 5 -

1028, 1033 (2006) (*AFSCME Drug Screeners*) (holding that while the unit-clarification petitions did not fall within any of the limited circumstances under which a party may file such a petition, the unique circumstances of an alleged confidential employee renders the petition appropriate); *Niles Township High School District 219 v. Illinois Educational Labor Relations Board*, 369 Ill. App. 3d 128, 142-43 (2006) (same). The Board found that same reasoning from those cases that applied to confidential employees also applied to managerial or supervisory employees within the meaning of the Act. The Board concluded that a unit clarification petition seeking to remove alleged managerial or supervisory employees from the bargaining unit could therefore be brought at any time, even if no other circumstances listed in its rules exist. The Board thus agreed with the Employer and held that the petitions were procedurally appropriate since they sought to remove alleged managerial positions from the bargaining unit.

¶ 18    Finally, as to whether the positions at issue are managerial, the Board found that the analysis in the second RDO was supported by the evidence. The Board accordingly adopted the second RDO's findings and conclusions that the positions at issue are managerial within the meaning of the Act.

¶ 19    Two of the five members of the Board dissented from the Board's order, in part. The dissenters objected to the Board's holding that found the petitions to be *procedurally* appropriate on the grounds that they sought to remove alleged managerial positions from the bargaining unit. The dissent opined that the Board should decline to procedurally extend the case law regarding confidential employees to managerial employees for purposes of their placement in the bargaining unit. The dissent stated: "We find it significant that [the] cases [that the Board relied on] arose in the limited context of confidential employees." The dissent noted that, in those cases, this court had considered the "unique circumstances" of including *confidential employees* in the bargaining process. The dissent found that in the instant case regarding managerial employees, "the record does not establish the 'unique circumstances' contemplated by the cases on which the majority relies." The dissent concluded: "The Board's determination here risks undermining established collective bargaining relationships and, more broadly, the stability of the collective bargaining process that the Act seeks to provide."

¶ 20    The Union subsequently filed an appeal (a petition for review) of the Board's decision in this court.

¶ 21                                    ANALYSIS

¶ 22    We note that we have jurisdiction to review this matter, as section 11(e) of the Act provides for appellate review of a final order by the Board (5 ILCS 315/11(e) (West 2016)) and the Union filed a timely petition for administrative review pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017).

¶ 23    On appeal, the Union makes numerous, overlapping arguments that can be summarized into the following four issues: (1) whether the Board's decision to permit unit clarification petitions for vacant positions violated its longstanding precedent, (2) whether the Board erred in holding that the petitions were procedurally appropriate, (3) whether the Board engaged in

and acts in a confidential capacity to persons who formulate, determine, and effectuate management policies with regard to labor relations or who, in the regular course of his or her duties, has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." 5 ILCS 315/3(c) (West 2016).

- 6 -

impermissible rulemaking when it held that the petitions were procedurally appropriate on the grounds that they sought to remove alleged managerial positions, and (4) whether the Board erred in holding that the positions at issue are managerial. We take each argument in turn.

¶ 24 The Union first argues that the Board's decision to accept the unit clarification petitions, even though the positions were vacant at the time the petitions were filed, violates the Board's longstanding precedent of rejecting unit clarification petitions when the position is vacant. The Union claims that job descriptions are insufficient evidence to determine whether a position is managerial because "without an employee in the position there is no ability for the union to determine the actual job duties of the position." The Union argues that the Board's modification of its longstanding policy on vacant positions is arbitrary and capricious because the modification improperly shifts the burden away from the Employer to prove the allegations in its petitions.

¶ 25 Administrative agencies are bound to follow their own administrative rules, but they are not absolutely bound by their prior rulings. *Board of Trustees of the University of Illinois v. Illinois Educational Labor Relations Board*, 2015 IL App (4th) 140557, ¶ 51. An agency that departs from its precedent must apply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored. *Niles Township*, 369 Ill. App. 3d at 138. An agency may adjust its standards and policies in light of experience, as long as the adjustments are not arbitrary and capricious. *Illinois Council of Police v. Illinois Labor Relations Board, Local Panel*, 404 Ill. App. 3d 589, 596-97 (2010). "The 'arbitrary and capricious' standard of review is the least demanding standard, the equivalent of the 'abuse of discretion' standard." *ManorCare Health Services, LLC v. Illinois Health Facilities & Services Review Board*, 2016 IL App (2d) 151214, ¶ 21.

¶ 26 There is no question that the Board has a longstanding precedent of rejecting unit clarification petitions for vacant positions. See *State of Illinois, Department of Central Management Services*, 20 PERI ¶ 105 (ILRB State Panel 2004) (holding that hearings on vacant positions necessarily result in a lack of evidence as to the actual duties of any employee who may someday hold the position). However, the Board in its September 2, 2016, order explicitly acknowledged that precedent, as well as the main policy reason behind it, which was the inability to adduce evidence that sufficiently defines the actual duties of the prospective employee. The Board then explained that it found "compelling reasons" to change course on its prior rulings and modify its policy in this case, stating: "the Employer in this case has provided an abundance of evidence of information that very clearly and specifically defines the duties that prospective employees will be expected to perform." The Board also cited to two cases from the United States Court of Appeals for the Seventh Circuit in support of its decision: *Moss v. Martin*, 473 F.3d 694, 699 (7th Cir. 2007) (holding that job descriptions may serve as reliable evidence of actual duties of a position as long as no basis is presented for finding them systemically unreliable), and *Riley v. Blagojevich*, 425 F.3d 357, 360-61 (7th Cir. 2005) (same). This demonstrates that the Board performed an *intentional, comprehensive* analysis before deciding to modify its policy.[8]

---

[8]We note that the Fourth District of this court recently addressed a similar issue in *Department of Central Management Services v. Illinois Labor Relations Board, State Panel*, 2018 IL App (4th) 160827. In that case, this court held that the Board arbitrarily departed from its longstanding precedent regarding impasses in negotiations. *Id.* ¶ 29. We found that the Board gave no explanation for why it

- 7 -

¶ 27    We disagree with the Union that the Board's decision improperly shifts the burden away from the Employer. The Employer was still required to prove the duties of the prospective employee through other evidence. And as the Board pointed out, the policy modification still allows the Union to use the unit clarification process to address a situation where the actual job duties turn out to be different from those originally described by the Employer. Under these facts and circumstances, we cannot say that the Board's action was arbitrary and capricious.

¶ 28    Further, it is evident that the Board thoroughly reconsidered its policy modification in its October 17, 2017, order. In that order, the Board stated: "[The Union] has not presented any new argument compelling us to reverse our September 2 Order." The Board also stressed the evidentiary value of job descriptions and noted that, in this case, additional evidence existed about the positions' job duties, rendering them "more than merely speculative."

¶ 29    We find that the Board applied a reasoned analysis indicating that its prior policy was being deliberately adjusted based on the facts and circumstances of the case before it. Accordingly, we cannot say that its decision to allow the unit clarification petitions to be filed, even though the positions were vacant at the time, was arbitrary and capricious.

¶ 30    The Union next argues that the Board erred in holding that the petitions were procedurally appropriate. Specifically, the Union claims that under the Board's rules, it is procedurally appropriate to file unit clarification petitions only under limited circumstances, and that none of those circumstances exist here.

¶ 31    The Act provides that "[a] labor organization or an employer may file a unit clarification petition seeking to clarify an existing bargaining unit." 5 ILCS 315/9(a-6) (West 2016). Section 1210.170(a) of the Board's regulations allow for the filing of unit clarification petitions under three sets of circumstances:

> "a) An exclusive representative or an employer may file a unit clarification petition to clarify or amend an existing bargaining unit when:
>
>> 1) substantial changes occur in the duties and functions of an existing title, raising an issue as to the title's unit placement;
>>
>> 2) an existing job title that is logically encompassed within the existing unit was inadvertently excluded by the parties at the time the unit was established; and
>>
>> 3) a significant change takes place in statutory or case law that affects the bargaining rights of employees." 80 Ill. Adm. Code 1210.170(a) (2003).

Through its prior decisions, the Board has also permitted unit clarification petitions in two additional circumstances not specifically described in section 1210.170(a): when a newly created position entails job functions already covered in an existing bargaining unit (*State of Illinois Departments of Central Management Services & Public Aid*, 2 PERI ¶ 2019 (ISLRB 1986)) and when processing a majority interest petition (*Treasurer of the State of Illinois*, 30 PERI ¶ 53 (ILRB State Panel 2013)). And most recently, this court has found the unit clarification process to be the appropriate vehicle to remove confidential employees from a bargaining unit at any time, even where the unit clarification petition did not fall within the

---

decided to depart from its longstanding precedent. *Id.* We accordingly remanded for the Board to either follow its precedent or explain its reasoning for departing from its precedent. *Id.* ¶ 36. However, that case is distinguishable from the instant case because, as discussed, the Board, under these facts and circumstances, *did* provide a detailed analysis explaining its reasoning for departing from its longstanding precedent regarding vacant positions.

limited circumstances for filing them as set forth by the Board's rules. See *AFSCME Drug Screeners*, 364 Ill. App. 3d at 1033 (holding that while the unit-clarification petitions did not fall within any of the limited circumstances under which a party may file such a petition, the unique circumstances of an alleged confidential employee renders the petition appropriate); *Niles Township*, 369 Ill. App. 3d at 142-43 (same). The issue of the Board's decision to apply the case law on confidential employees to managerial employees and find that the unit clarification petitions in this case were procedurally appropriate is a mixed question of law and fact. This court reviews mixed questions of law and fact under the clearly erroneous standard, meaning that we must affirm an agency's decision unless we are left with the firm conviction that a mistake has been committed. *International Brotherhood of Electrical Workers, Local 21 v. Illinois Labor Relations Board*, 2011 IL App (1st) 101671, ¶ 27.

¶ 32    The Board here concluded that the Employer's unit clarification petitions were procedurally appropriate for two reasons. First, the Board held that the petitions fell within the circumstances outlined in section 1210.170(a) of the Board's rules because the Board's September 2, 2016, decision regarding vacant positions was a change in case law[9] and because of the substantial changes in duties to the PSA Option 1 position. Second, the Board held that the petitions were procedurally appropriate because they involved alleged managerial employees, who are statutorily excluded from the collective bargaining unit. We find that the Board's first reason for finding the unit clarification petitions procedurally appropriate is not clearly erroneous. We agree that section 1210.170(a)(3) of the Board's rules applied because the Board had recently made a significant change in allowing the filing of petitions regarding vacant positions. We also find no error in the Board's additional finding that the unit clarification for the PSA Option 1 position was procedurally appropriate under section 1210.170(a)(1) of the Board's rules, which allows petitions to be filed when there has been substantial changes in the duties of the position. The evidence showed that there had been significant changes to the PSA Option 1 position (*i.e.*, it was based on the eliminated Executive II position but now has "a higher level of duties," including the new duty of supervising staff members).

¶ 33    However, we find that the Board erred to the extent that it held that the petitions were procedurally appropriate because they involved alleged *managerial employees*. In its reasoning, the Board relied upon *AFSCME Drug Screeners* and *Niles Township*, which held that the unit clarification process is the appropriate vehicle to remove confidential employees from the bargaining unit at any time, even where the unit clarification petition did not fall within the limited circumstances for filing them as set forth by the Board's rules. We find those cases distinguishable. As the dissent to the Board's holding noted, those cases regarded *confidential employees* and the *unique circumstances* surrounding them. Section 3(c) of the Act defines a confidential employee as:

_____

[9]The Employer argues that the Union failed to raise the issue of whether the Board correctly determined that the petitions were appropriately filed on the basis that the Board's September 2, 2016, order regarding vacant positions created a significant change in case law affecting the bargaining rights of employees. However, forfeiture is a limitation on the parties, not this court, and we may exercise our discretion to review an otherwise forfeited issue. *Great American Insurance Co. of New York v. Heneghan Wrecking & Excavating Co.*, 2015 IL App (1st) 133376, ¶ 81 (Gordon, J., specially concurring). Accordingly, we exercise our discretion to consider this issue.

"an employee who, in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine, and effectuate management policies with regard to labor relations or who, in the regular course of his or her duties, has authorized access to information relating to the effectuation or review of the employer's collective bargaining policies." 5 ILCS 315/3(c) (West 2016).

In finding that unit clarification petitions seeking to remove alleged confidential employees are appropriate, this court has stated:

"Given the importance of confidentiality in labor-relations matters, to protect both the employers and the confidential employees (who could find themselves torn between loyalty to their employer and their bargaining unit), we hold that a unit-clarification petition may appropriately be used to sever confidential employees from a bargaining unit.

Were we to accept the Board's argument that unit-clarification petitions may only be filed under the four limited circumstances previously stated, an employer would be barred from removing a confidential employee from a bargaining unit regardless of what information that employee has access to until a new bargaining-unit contract is negotiated." *AFSCME Drug Screeners*, 364 Ill. App. 3d at 1034.

¶ 34    The Board in its order here did not identify any similar unique circumstances for *managerial employees*. Indeed, section 3(j) of the Act defines a managerial employee, in part, as: "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 2016). This definition contains no mention of authorized access to information, which is what this court relied upon to distinguish confidential employees. A managerial employee does not present the same type of conflict with labor relations issues as a confidential employee. Simply because managerial employees are statutorily excluded employees does not mean that unit clarification petitions regarding alleged managerial employees can be filed at any time outside of the limited circumstances set forth in the Board's rules. The Board did not provide a compelling reason to apply this court's reasoning on confidential employees to managerial employees. In fact, we agree with the dissenting Board members in their reasoning, which points out that *AFSCME Drug Screeners* and *Niles Township* are strictly limited to confidential employees and that expanding that exception to managerial employees risks undermining the stability of the collective bargaining process. See *International Union of Operating Engineers, Local 148 v. Department of Employment Security*, 345 Ill. App. 3d 382, 392 (2003) ("protecting the integrity of the collective bargaining process is germane to the purpose of a union"), *rev'd on other grounds*, 215 Ill. 2d 37 (2005). Hence, to the extent that the Board based its procedural ruling regarding the filing of the petitions related to managerial employees on this court's rulings regarding confidential employees, that was erroneous. However, the error was harmless since there was another appropriate procedural vehicle by which the Board could and did hear the matter.

¶ 35    We affirm the Board's decision holding that the unit clarification petitions were procedurally appropriate pursuant to section 1210.170(a) of the Board's rules. However, we vacate the Board's decision to the extent that it held that the unit clarification petitions were procedurally appropriate because they involved alleged managerial employees. The Board committed error when it sought to extend this court's rulings regarding confidential employees to managerial employees for the limited purposes discussed herein.

¶ 36    The Union next argues that the Board engaged in impermissible rulemaking when it held that the unit clarification petitions were procedurally appropriate on the grounds that the petitions involved alleged managerial employees. However, due to our foregoing analysis vacating that holding, that issue is now moot and we need not address it.

¶ 37    We next address the Union's final argument: that the Board erred in determining the positions to be managerial within the meaning of the Act. The Union claims that none of the witnesses had any direct knowledge regarding the duties of the positions and that there is no other evidence supporting the Board's finding that the positions are managerial.

¶ 38    As noted above, the Act describes a "managerial employee" as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 2016). The Board has determined this definition to be a two-part test, and the employee must meet both criteria in the definition in order to be considered managerial. *City of Evanston v. Illinois State Labor Relations Board*, 227 Ill. App. 3d 955, 974 (1992). "The Act does not define 'executive and management functions,' but the Board and appellate court have said that these functions 'relate to running a department and include such activities as formulating department policy, preparing the budget, and assuring the efficient and effective operations of the department.' " *Department of Central Management Services/Department of Healthcare & Family Services v. Illinois Labor Relations Board, State Panel*, 388 Ill. App. 3d 319, 330 (2009) (quoting *Village of Elk Grove Village v. Illinois State Labor Relations Board*, 245 Ill. App. 3d 109, 121-22 (1993)). The relevant consideration for us is the employee's effective recommendation or control, rather than final authority. *County of Cook v. Illinois Labor Relations Board–Local Panel*, 351 Ill. App. 3d 379, 387 (2004). Whether the Board correctly determined that the positions at issue in this case are managerial is a mixed question of law and fact, which we review under the clearly erroneous standard. *Id.* at 385.

¶ 39    We disagree with the Union that there was no evidence supporting the Board's finding that the positions at issue are managerial. In addition to submitting job descriptions and other documents, the Employer also presented two witnesses who *did* have direct knowledge of the positions' duties. Sheila Riley testified as to the duties of PSA Option 8L positions, which she oversees. And Jeanette Okulinski testified as the Human Resources Manager, who personally created and wrote the job description for the PSA Option 1 position. The witnesses gave detailed descriptions of the required duties of each job.

¶ 40    The evidence shows that the PSA Option 8L positions' duties primarily include performing legal screenings and making recommendations to DCFS on child placement issues and allegations of abuse or neglect. These duties amount to managerial functions, as they are vital to achieving the DCFS mission. See *Department of Central Management Services/Illinois Commerce Comm'n v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 766, 778 (2010) (managerial functions include having prominent roles in the fulfillment of the agency's mission). The record further reflects that the job duties of the positions at issue include reviewing policies and law and making recommendations on legal issues. These duties demonstrate the responsibility for directing the effectuation of management policies and practices. See *Village of Elk Grove Village*, 245 Ill. App. 3d at 122 (to be managerial, the employee must have substantial discretion to determine how and to what extent policies will be implemented and have authority to oversee and direct that implementation). Thus, the Board's

holding that the two PSA Option 8L positions are managerial within the meaning of the Act is not clearly erroneous.

¶ 41     As for the PSA Option 1 position, the record reflects that the duties include overseeing the migrant and seasonal farm workers program and supervising the staff members responsible for implementing the program. Based on the well-settled principles previously discussed (*supra* ¶ 38), these duties are also clearly management functions. This is especially true considering that the PSA Option 1 position was specifically created based on the eliminated Executive II position in order to have "a higher level of duties" and the ability to supervise other staff. Thus, the Board's holding that the PSA Option 1 position is managerial within the meaning of the Act is not clearly erroneous. Accordingly, we affirm the Board's holding that the positions at issue are managerial.

¶ 42                                 CONCLUSION

¶ 43     For the foregoing reasons, we affirm the Board's decision to permit unit clarification petitions for the vacant positions at issue, affirm the Board's holding that the petitions were procedurally appropriate pursuant to section 1210.170(a) of the Board's rules, vacate the Board's holding that the unit clarification petitions were procedurally appropriate based on the Board extending this court's reasoning regarding confidential employees to managerial employees but find the Board's error on that basis to be harmless, and affirm the Board's finding that the positions at issue are managerial.

¶ 44     Affirmed in part and vacated in part.