THIRD DIVISION
November 10, 2009

No. 1-08-2566

| | | |
|---|---|---|
| THE CITY OF CHICAGO, | ) | Petition for Review from |
| | ) | the Illinois Labor Relations Board |
| Petitioner, | ) | Local Panel |
| | ) | |
| v. | ) | |
| | ) | No. LRC 8043 |
| ILLINOIS LABOR RELATIONS BOARD | ) | |
| LOCAL PANEL and INTERNATIONAL | ) | |
| BROTHERHOOD OF TEAMSTERS, LOCAL | ) | |
| 743, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE QUINN delivered the opinion of the court:

Petitioner, the City of Chicago (City), filed a petition seeking direct review of an order

from the Illinois State Labor Relations Board, Local Panel (Board) certifying respondent,

International Brotherhood of Teamsters, Local 743 (Teamsters), as the exclusive bargaining

representative of approximately 34 employees of the City in the classifications of "Public Health

Nurse III" and "Public Health Nurse IV" (PHN III and IV). The Board's Executive Director

prepared a tally of majority support and certified the Teamsters as the exclusive bargaining

representative without granting a hearing on the City's objection to the bargaining unit. The City

urges this court to reverse the Board's decision and find that the bargaining unit is inappropriate

1-08-2566

based on the City's historical pattern of collective bargaining, the community of interest among all of the City's nursing classifications, and the Board's policy against fragmentation. The City also argues that it presented reasonable cause to believe a question of representation existed to entitle it to a hearing before the Board and that the Executive Director's certification of the Teamsters is void because the Board improperly delegated final authority to the Executive Director. This court granted a motion filed by the Service Employees International Union (SEIU), Local 73, to file a brief *amicus curiae* in support of the City's argument. For the following reasons, we affirm.

## I. BACKGROUND

On June 27, 2008, the Teamsters filed with the Board a petition to become the exclusive bargaining representative of 34 City employees, classified as PHN IIIs and IVs. See 5 ILCS 315/9(a)(1) (West Supp. 2007). In its petition, the Teamsters stated that a majority of individuals in the proposed unit wished to be represented by the Teamsters for purposes of collective bargaining. On July 23, 2008, the City filed a position statement arguing that the proposed unit was inappropriate for two reasons. First, all of the factors to be considered by the Board pursuant to section 9(b) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/9(b) (West Supp. 2007)) weighed heavily in favor of the conclusion that the only appropriate unit for the City's PHN IIIs and IVs would be the existing bargaining unit represented by the Illinois Nurses Association (INA), and consisting of all of the City's represented nursing titles. Second, several of the employees of the proposed unit should have been excluded because they were supervisors and managers who are excluded from the Act. See 5 ILCS 315/3(j),(r) (West Supp. 2007).

In its position statement, the City provided an overview of its collective bargaining

structure for the approximately 33,947 employees, out of approximately 38,726, who are represented by a union. The City stated that it currently engages in collective bargaining with the following civilian units: (1) the Trades Coalition, which represents 32 bargaining units consisting of approximately 7,730 City employees in various building trade, craft and related titles; (2) American Federation of State, County and Municipal Employees (AFSCME), which represents four separate bargaining units consisting of approximately 4,746 City employees in administrative, clerical, human services and inspection, professional, and library titles; and (3) "Unit II," a single bargaining unit consisting of approximately 2,997 City employees in various nonsworn, uniformed public safety titles, except for supervising police communications operators (SPCOs) who are represented in a separate unit by Teamsters Joint Council 25;[1] and INA, which represents all of the approximately 123 City nurses in the "Occupational Health Nurse," PHN I, PHN I-Hourly, PHN II, PHN-Temporary, and "Nurse Practitioner" (NP) job titles. PHN III and IV titles have been in existence since before 1986, and have never been represented by any union.

The City provided its classification and pay plan, which showed that the PHN I-Hourly, PHN I, PHN II, PHN III, PHN IV, PHN-Temporary and NP titles are all part of the City's

---

[1] The Board certified the Teamsters Joint Council 25 as the representative of the approximately 17 SPCOs on October 16, 2007. See International Brotherhood of Teamsters, 23 Pub. Employee Rep. (Ill.) par. 172, No. L-RC-06-008 (Illinois Labor Board, Local Pnael October 16, 2007)(hereinafter 23 Pub. Employee Rep. (Ill.) par172) (SPCOs) (appeal dismissed for lack of jurisdiction); City of Chicago v. Illinois Labor Relations Board, Local Panel, 392 Ill. App. 3d 1080 (2009).

1-08-2566

"Public Health Nursing" title series. All of these nursing titles, except for PHN-Temporary, are compensated on the same salary schedule, in ascending order, with the PHN Is at the lowest pay grade and the NPs at the highest grade. The City explained that all of the nurses employed by the Chicago Department of Public Health (CDPH) work together on a daily basis and supervise one another. Many of the PHN IIIs and IVs supervise PHN Is and IIs and also work beside them in clinical and field settings to administer care to the public. All of the PHNs and NPs employed by the CDPH must be licensed as registered nurses (RNs) with the State of Illinois and share the common purpose of providing nursing care to communities throughout the City. The exact capacity in which each classification of nurse fulfills this purpose may vary. All of the PHNs and NPs must wear the same uniform and are subject to the City's personnel rules, as well as the compensation terms in the City's salary resolution.

The City's classification system reflects an increase in the educational and experience requirements from one title to the next higher title in the series. The City's job description states that a PHN IV manages public health nursing programs for an assigned region or develops and administers citywide procedures, protocols and standards for public health nursing programs. Minimum qualifications for a PHN IV are a bachelor's degree in nursing from a program accredited by the National League for Nursing or an approved foreign credential evaluation; a master's degree in nursing or public health; three years of progressively responsible public health nursing experience, including one year of supervisory experience or an equivalent combination of training and experience; and certification in a nursing specialty.

The job description states that a PHN III supervises a staff of public health nurses

performing nursing activities in a health clinic or in a community. The minimum qualifications for a PHN III include a bachelor's degree in nursing from a program accredited by the National League for Nursing or an approved foreign credential evaluation supplemented by two years of progressively responsible nursing experience.

The job description states that a PHN II works primarily in the field, providing nursing care to individuals, groups and families, and may function as a nursing team leader in a health clinic. Minimum qualifications include a bachelor's degree in nursing from a program accredited by the National League for Nursing or an approved foreign credential evaluation supplemented by one year of public health nursing experience. The job description states that a PHN I provides professional nursing care to individuals, groups and families in a health clinic or in a community environment. Minimum qualifications for a PHN I include a licence to practice as an RN in Illinois and two years of work experience in ambulatory care nursing or a bachelor's degree in nursing from a program accredited by the National League for Nursing, or an equivalent combination of training and experience.

Based on these facts, the City argued in its position statement that the PHN IIIs and IVs shared a substantial community of interest with the other PHNs and that placing PHN IIIs and IVs into a separate unit would fragment the bargaining process and disrupt the City's established bargaining structure. The City maintained that the only bargaining unit appropriate to represent PHN IIIs and IVs was the existing bargaining unit of represented city nurses.

On July 31, 2008, an attorney for the Board issued a letter directing the City to show cause why certain PHN IIIs and IVs were alleged by the City to be supervisory or managerial

employees, who should have been excluded from the proposed bargaining unit. The City responded to the Board's request for more information.

On August 20, 2008, the Executive Director of the Board certified the Teamsters as the exclusive representative of the unit of PHN IIIs and IVs, excluding two individuals as supervisory or managerial employees. The "Certification of Representative" found that the unit in question was "appropriate for the purposes of collective bargaining with respect to rates of pay, wages, hours of employment, or other conditions of employment." A tally sheet accompanying the certification indicated that 23 of the 32 members of the proposed unit had submitted signed cards reflecting their desire to have the Teamsters represent the proposed unit of PHN IIIs and IVs, which was a sufficient showing of majority support.

On August 25, 2008, the Executive Director issued a letter to the City, which explained that the information submitted by the City was not sufficient to raise an issue warranting a hearing about the appropriateness of the bargaining unit. The Executive Director stated that the present case was similar to the issues presented in SPCOs, 23 Pub. Employee Rep. (Ill.) par. 172 (appeal dismissed for lack of jurisdiction), and City of Chicago v. Illinois Labor Relations Board, Local Panel, 392 Ill. App. 3d 1080 (2009), in which the City maintained that the petitioned-for unit was inappropriate and that the only appropriate unit for the petitioned-for employees would be an existing unit of employees represented by a non-party union. The Executive Director noted that, similar to SPCOs, the City argued in the present case that the only appropriate unit for PHN IIIs and IVs would be the existing unit of City employees in the titles of PHN I, II, and NPs, represented by INA. The Executive Director noted that INA had failed to seek to represent the

petitioned-for employees. The Executive Director also explained that no one disputed that the unit represented by INA would be an appropriate placement, but that issue was irrelevant because the issue, as in SPCOs, was "whether the petitioned-for unit is an appropriate unit." The Executive Director concluded, "In light of the factors set forth in Section 9(b) of the Act, again, as in the earlier case [of SPCOs], only the fragmentation factor favors the City's position, and by itself, is insufficient to deny the instant Teamster petition."

On August 27, 2008, the Executive Director issued another letter to the City, noting the City's reliance on the Board's decisions reflecting a preference for large, functionally based bargaining units. The Executive Director, relying on the Board's decision in SPCOs, again found that "pursuant to Section 9(b) of the Act, only the fragmentation factor favored the City's position, which by itself was sufficient to deny the instant petition." The City subsequently filed a petition for review of the Executive Director's certification order with this court.

## II. ANALYSIS

### A. The Appropriateness of the Proposed Bargaining Unit

On appeal, the City first contends that the Board's certification of the bargaining unit consisting of only two of the eight City nursing titles was clearly erroneous. SEIU filed a brief *amicus curiae* in support of the City's argument. The Board maintains that a PHN III and IV bargaining unit is appropriate.

### 1. Standard of Review

We begin by addressing the question of whether a PHN III and IV bargaining unit is

appropriate. Because this issue presents a mixed question of fact and law, " 'requiring an examination of the legal effect of a given set of facts,' " we apply a clearly erroneous standard of review. County of Cook (Provident Hospital) v. Illinois Labor Relations Board, Local Panel, 369 Ill. App. 3d 112, 118 (2006), quoting Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board, 319 Ill. App. 3d 729, 736 (2001). The Board's "resolution of such questions will be upheld if 'reasonable, consistent with labor law and based on findings supported by substantial evidence.' " Illinois Fraternal Order of Police Labor Council, 319 Ill. App. 3d at 736, quoting Northwest Mosquito Abatement District v. Illinois State Labor Relations Board, 303 Ill. App. 3d 735, 742 (1999).

### 2. Section 9(b) Factors

Section 9(b) of the Act provides:

"The Board shall decide in each case, in order to assure public employees the fullest freedom in exercising the rights guaranteed by this Act, a unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as: historical pattern of recognition; community of interest including employee skills and functions; degree of functional integration; interchangeability and contact among employees; fragmentation of employee groups; common supervision, wages, hours and other working conditions of the employees involved; and the desire of the employees. For purposes of this subsection, fragmentation shall not be the sole or predominant factor used by the Board in determining an appropriate bargaining unit." 5 ILCS 315/9(b) (West Supp. 2007).

"Section 9(b) of the Act does not require that a proposed unit be the most appropriate or the only appropriate unit." County of Cook (Provident Hospital), 369 Ill. App. 3d at 118.

The City and SEIU argue that the Board went against its many prior decisions by certifying a small unit of City nurse titles where the City has engaged in a historical practice of bargaining only with large, functionally based units and where the petitioned-for employees share a community of interest with the other employees who are already represented in a large unit. The Board argues that the section 9(b) factors, other than fragmentation, support the finding that the unit is appropriate and fragmentation alone is not a sufficient basis to find the unit inappropriate.

In support of their argument that the petitioned-for unit is inappropriate, the City and SEIU cite previous Board decisions indicating a preference for large, broad-based bargaining units. See City of Chicago Law Department, 3 Pub. Employee Rep. (Ill.) par. 3026, No. L-RC-87-04 (ILLRB July 21, 1987); City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3014, Nos. L-RC-86-02, L-UC-86-03, L-UC-86-13 (ILLRB June 2, 1986) (Detention Aides); City of Chicago, 2 Pub. Employee Rep. (Ill.) par. 3009, No. L-RD-85-08 (ILLRB April 17, 1986) (Animal Control Officers). The City and SEIU argue that the Board disregarded this preference and failed to provide an adequate explanation for certifying the small unit of PHN IIIs and IVs, where the petitioned-for unit would unduly fragment the City's bargaining structure and the only appropriate unit for PHN IIIs and IVs is the existing unit of City employees in the titles of PHN I, II, and NPs, represented by INA.

Recently, the Board has issued decisions in which it reconsidered its preference for large,

functionally based units. In this case, the Executive Director relied on the Board's decision in SPCOs, 23 Pub. Employee Rep. (Ill.) par. 172. In SPCOs, the Board noted:

"In its exceptions, the Employer contends that the ALJ misapplied the law, arguing that the unit found appropriate by the ALJ is contrary to the Board's long established preference for large, functionally-based bargaining units. In support of its position, the City cites a long list of previous Board decisions standing for precisely that proposition. [Citations.]

Nonetheless, as the ALJ noted, this case pits large functionally-based units and the City's administrative efficiency against the right of the petitioned-for employees to engage in collective bargaining. As noted above, for the past two decades, the Board's standard solution in these situations has been to favor the large, functionally-based units, and we think that for most of that time, this was the proper course, as to do otherwise would have led to a proliferation of bargaining units, balkanizing the City's workforce, ultimately resulting in the undermining of collective bargaining. We regularly reexamine this policy, however, as it must be harmonized with the rights created by the Act. For example, in this case, dismissal of the [Teamster's] petition will result in the petitioned-for employees' rights under the Act continuing to be dependent, as they have been for the approximately twelve years the SPCO title has existed, on the Unit II coalition seeking to represent it. The Board's preference for large, functionally-based units when most of the City's workforce was unorganized, was in keeping with the judicious administration of the Act, however, over time, as the Board has often noted, and the record reflects, most of the

1-08-2566

City's workforce eligible to be organized is in fact, organized. Yet, small pockets of

employees, like those petitioned-for herein, continue to exist, and their right to organize

should not remain entirely under the control of a third party, in this case the Unit II

coalition, when the circumstances that originally dictated such a policy have changed with

time." SPCOs, 23 Pub. Employee Rep. (Ill.) par. 172, at 734.

Relying on this reasoning, the Executive Director found that, as in SPCOs, the issue in this case

was "whether the petitioned-for unit is an appropriate unit." The Executive Director noted that

while the unit represented by INA would be an appropriate placement for the nurse titles

petitioned for, the INA have failed to seek to represent the petitioned-for nurse titles, and that

issue was irrelevant. The Executive Director concluded that, pursuant to the reasoning set forth

in SPCOs and under section 9(b) of the Act, the fragmentation factor by itself was insufficient to

deny the petition.

More recently, this court affirmed an order by the Board certifying a union to be the

exclusive bargaining representative of the six staff attorneys employed with the Bureau of

Administrative Litigation. State v. State, 388 Ill. App. 3d 319 (2009)(Department of Healthcare

& Family Services). In Department of Healthcare & Family Services, the Board declined to

accept the ALJ's recommendation that the union's petition be dismissed on the grounds that, *inter*

*alia*, the petition carved a subset of employees out of a larger, centralized classification.


The Board explained:

" 'The preference for large, functionally-based [*sic*] units was, and continues to be,

-11-

an important consideration, yet[,] [in some of our previous decisions,] excessive concern with avoiding fragmentation and promoting economy and efficiency in public bargaining and contract administration consumed not only the employees' right to organize, but also the criteria set forth in [s]ection 9(b) [(5 ILCS 315/9(b) (West Supp. 2007))]. The Act demands that we balance between these extremes so as to avoid regularly and completely depriving public employees of their right granted therein. After reviewing the petitioned-for unit in light of the considerations set forth in [s]ection 9(b), [we find that] only the fragmentation factor favors dismissal, and by itself, it is insufficient to deny the [union's] petition.' " Department of Healthcare & Family Services, 388 Ill. App. 3d at 328-29.

This court found that the record contained sufficient evidence to support the Board's finding that a bargaining unit consisting of the six staff attorneys in the Bureau of Administrative Litigation was an appropriate unit. Department of Healthcare & Family Services, 388 Ill. App. 3d at 337. This court declined to hold that all of the employees that were in the subclassification of public service administrator "option 8L," including the six staff attorneys, belong in the same bargaining unit simply because they are attorneys. Department of Healthcare & Family Services, 388 Ill. App. 3d at 337. This court noted that publicly employed attorneys do not have the same job description, and they are not interchangeable. Department of Healthcare & Family Services, 388 Ill. App. 3d at 337. While this court noted that earlier Board decisions held that fragmentation of a classification raised a "presumption of inappropriateness," this court explained that "the Board seems to recognize in its decision in the present case, the 'presumption of inappropriateness' is difficult to square with section 9(b), which says: '[F]ragmentation shall not be the sole or

predominant factor used by the Board in determining an appropriate bargaining unit.' " Department of Healthcare & Family Services, 388 Ill. App. 3d at 335, quoting 5 ILCS 315/9(b) (West Supp. 2007).

Applying the section 9(b) factors, this court found that the six staff attorneys in the Bureau of Administrative Litigation have the same skills and serve the same functions; that they are functionally integrated; that they are interchangeable and have regular contact with each other; and that they have the same supervisor, hours, and working conditions. This court noted that section 9(b) "forbids us to make fragmentation a predominant factor." Department of Healthcare & Family Services, 388 Ill. App. 3d at 337. Accordingly, this court concluded that the Board's finding that the petitioned-for unit was appropriate was not clearly erroneous. Department of Healthcare & Family Services, 388 Ill. App. 3d at 337.

Consistent with section 9(b), here, the Executive Director recognized that while the fragmentation factor favored the City's position, it is not the sole factor in determining whether a unit is appropriate. In light of the above discussion, we consider whether other factors set out in section 9(b) support the Executive Director's finding of appropriateness.

In this case, it is undisputed that PHN IIIs and IVs have never been represented by a union. Therefore, there is no historical pattern of recognition of PHN IIIs and IVs. See Will County State's Attorney v. Illinois State Labor Relations Board, 229 Ill. App. 3d 895, 900 (1992) ("historical recognition" depended upon past State's Attorneys' ratification of contracts negotiated on behalf of their employees in the years prior to the enactment of the Act, *i.e.*, before July 1, 1984).

1-08-2566

PHN IIIs and IVs share a community of interest including employee skills and functions. They work in the same facilities, have contact with each other and share similar supervision, wages, hours and other working conditions. It is also their desire to have their own bargaining unit as reflected in the tally of majority interest attached to the Executive Director's certification order.

The City and SEIU contend that the petitioned-for unit is not appropriate where PHN IIIs and IVs share a community of interest with the other City nursing titles represented by INA. SEIU argues that the Executive Director ignored this factor in certifying the petitioned-for unit. However, the record shows that the Executive Director noted: "[N]o one disputes that the unit represented by INA would be an appropriate placement for the nurse titles petitioned-for herein, but that particular issue is irrelevant. As in [SPCOs, 23 Pub. Employee Rep. (Ill.) par. 72], the issue is whether the petitioned-for unit is an appropriate unit." We cannot say that the Executive Director's decision was clearly erroneous in this regard. As previously noted, section 9(b) of the Act does not require that a proposed unit be the most appropriate or the only appropriate unit. County of Cook (Provident Hospital), 369 Ill. App. 3d at 118 (affirming the certification of a bargaining unit made up of upper level administrative assistants (AAIIIs and IVs) at one hospital in the county hospital system).

We note that PHN IIIs and IVs share some of the same skills, uniforms, and are covered by the same City Personnel Rules as the other City nurse titles. Nonetheless, the issue before the Executive Director was not whether the placement of PHN IIIs and IVs in the bargaining unit of nursing titles represented by INA, which did not seek to represent PHN IIIs and IVs. Rather, the

-14-

1-08-2566

Executive Director was charged with determining the appropriateness of the petitioned-for unit of PHN IIIs and IVs. Further, to accept the City and SEIU's argument that the existing bargaining unit represented by INA is the only appropriate unit would be to deny the PHN IIIs and IVs their rights under section 2 of the Act to "full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of negotiating wages, hours and other conditions of employment or other mutual aid or protection." 5 ILCS 315/2 (West 2006).

Accordingly, we find that the record contains evidence to support the Executive Director's finding that a bargaining unit consisting of PHN IIIs and IVs is an appropriate unit. Considering that section 9(b) forbids the consideration of fragmentation as a predominant factor, we conclude that the Executive Director's finding was not clearly erroneous.

B. Right to a Hearing Before the Board

The City also argues that the Board improperly certified the petitioned-for unit without first conducting a hearing where there was reasonable cause to believe that there were unresolved issues relating to the question concerning representation.

Section 9(a) of the Act provides that when a representation petition is filed "the Board shall investigate such petition, and if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing upon due notice." 5 ILCS 315/9(a) (West Supp. 2007). Accordingly, the Act "on its face provides for the evaluation of the evidence gathered and a determination of its sufficiency before an appropriate hearing must be held." Illinois Council of Police v. Illinois Labor Relations Board, Local Panel, 387 Ill. App. 3d 641, 659 (2008). "This interpretation is fully consistent with and borne out by the Board's own regulations

-15-

1-08-2566

promulgated to implement section 9(a) of the Act." <u>Illinois Council of Police</u>, 387 Ill. App. 3d at 659, citing 80 Ill. Adm. Code §1210.100(a), as amended by 28 Ill. Reg. 4187, eff. February 19, 2004. These regulations provide a procedure under which a petition may be either dismissed or certified without a hearing. Section 1210.100(b)(7) of Title 80 of the Illinois Administrative Code provides, in relevant part:

"(A) After the investigation, the Executive Director shall dismiss a petition, or the Administrative Law Judge shall recommend to the Board that a petition be dismissed, when a petition has been filed untimely; when the bargaining unit is clearly inappropriate; when the showing of interest is not adequate; when the employer is not covered by the Act; when the employees are not covered by the Act; or for any other reason there is no reasonable cause to believe that a question of representation exists. ***

(B) Where there are no unit appropriateness or exclusion issues, or any other issues necessitating a hearing, the Executive Director will prepare a tally of the finding of majority support and certify the petitioner as the unit's exclusive representative within 20 days after the service of the petition. ***.

(C) If the investigation discloses that there is reasonable cause to believe that there are unresolved issues relating to the question concerning representation, the Board shall set the matter for hearing before an Administrative Law Judge. ***" 80 Ill. Adm. Code §1210.100(b)(7), as amended by 28 Ill. Reg. 4192, eff. February 19, 2004.

While the test to determine whether a hearing is required under the Act is a legal one, involving whether the Board had "no reasonable cause" to believe that a question of representation existed

1-08-2566

(see 5 ILCS 315/9 (West 2006)), that test must be applied to and depends upon the sufficiency of facts presented to the Board during its investigation of the representation petition. See 5 ILCS 315/9 (West Supp. 2007); 80 Ill. Adm. Code §1210.100(b)(7), as amended by 28 Ill. Reg. 4192, eff. February 19, 2004. As such, this court reviews the Board's finding that a hearing was not required under the clearly erroneous standard. See Illinois Council of Police, 387 Ill. App. 3d at 657-58. Under this standard, an agency's decision will not be upheld only where " 'the reviewing court, on the entire record, is "left with the definite and firm conviction that a mistake has been committed." ' " Illinois Council of Police, 387 Ill. App. 3d at 658, quoting AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 395 (2001), quoting United States v. United States Gypsum Co., 333 U.S. 364, 365, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

Here, since the Executive Director determined that only the fragmentation factor favored the City's position, which by itself was insufficient to deny the petition, there remained no further appropriateness issues to necessitate a hearing. As the City notes on appeal, "most of what we assert about the City's nursing titles is readily apparent from the documentation we submitted." Since this documentation was insufficient to raise an issue of appropriateness, it is unclear what further evidence the City would have provided to support its position during a hearing. As previously discussed, we cannot say that the Executive Director's determination regarding the section 9(b) factors was clearly erroneous and, therefore, we find that the Executive Director's decision that no hearing was required was also not clearly erroneous in this case.

C. Certification by the Executive Director Rather than Local Panel

-17-

1-08-2566

While the City acknowledges that the Board's regulations authorize the Executive Director to certify a petitioner as the unit's exclusive representative where there "are no unit appropriateness or exclusion issues, or any other issues necessitating a hearing" (80 Ill. Adm. Code §1210.100(b)(7)(B)), as amended at 28 Ill. Reg. 4192, eff. February 19, 2004, the City, nonetheless, argues that the certification in this case is void because the Act required the Board's Local Panel, rather than the Executive Director, to issue a final decision.

Administrative regulations have the force and effect of law, are presumed valid, and will be construed under the same standards that apply in construing statutes. Granite City Division of National Steel Co. v. Illinois Pollution Control Board, 155 Ill. 2d 149, 162 (1993). Regulations adopted by an agency pursuant to its statutory authority will not be set aside unless they are arbitrary and capricious. Granite City Division of National Steel Co., 155 Ill. 2d at 162. "Our courts have repeatedly held that a reviewing court must give deference to an administrative agency's interpretation of the statute that it was created to enforce." Illinois Council of Police, 387 Ill. App. 3d at 660. " 'A significant reason for deferring to an agency's interpretation of its enabling statute is that the agency makes informed decisions based on its experience and expertise.' " Illinois Council of Police, 387 Ill. App. 3d at 660, quoting County of Will v. Illinois State Labor Relations Board, 219 Ill. App. 3d 183, 185 (1991). The Board's interpretation of its own standards and regulations is accorded deference as " 'courts appreciate that agencies can make informed judgments upon the issues, based upon their experience and expertise' " and this policy is consistent with the principle that administrative agencies must have wide latitude to adopt regulations reasonably necessary to effectuate their statutory functions. Water Pipe

-18-

Extension, Bureau of Engineering v. Illinois Local Labor Relations Board, 252 Ill. App. 3d 932, 936 (1993), quoting Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n, 95 Ill. 2d 142, 153 (1983).

A previously discussed, section 9(a) of the Act provides for the evaluation of the evidence gathered and a determination of its sufficiency before an appropriate hearing must be held on a representation petition. See 5 ILCS 315/9(a) (West Supp. 2007). Section 5(g) of the Act authorizes the two Board panels[2] as follows: "Each panel may appoint or employ an executive director, attorneys, hearing officers, mediators, fact-finders, arbitrators, and such other employees as it may deem necessary to perform its functions. The governing boards shall prescribe the duties and qualifications of such persons appointed ***." 5 ILCS 315/5(a)(West 2006). Thus, section 5(g) of the Act authorizes the Board's panels to delegate functions to its Executive Director. The regulations promulgated by the Board, pursuant to section 1210.100(b)(7) of title 80 of the Administrative Code (80 Ill. Adm. Code §1210.100(b)(7)(B), amended at 28 Ill. Reg. 4192, eff. February 19, 2004), authorized the Executive Director, as in the present case, to certify a union as the petitioned-for unit's exclusive representative without a hearing where there are "no

_____

[2] The two panels are the State Panel, which generally has jurisdiction over collective bargaining matters involving employees of the State of Illinois and employees of units of local government with a population not in excess of 2 million people, and the Local Panel, which has jurisdiction over collective bargaining matters between employee organizations and units of local government with a population over 2 million people, including the City. See 5 ILCS 315/5(a),(b) (West 2006).

unit appropriateness or exclusion issues, or any other issues necessitating a hearing." We cannot say that the regulations adopted by the Board are arbitrary and capricious such that they should be set aside. See Granite City Division of National Steel Co., 155 Ill. 2d at 162.

Recently, in Illinois Council of Police, 387 Ill. App. 3d at 661, this court determined that the regulations promulgated by the Board, pursuant to section 1210.100 of the Administrative Code (80 Ill. Adm. Code §1210.100(a)(6), amended at 28 Ill. Reg. 4188, eff. February 19, 2004), vested the ALJ with express authority to dismiss a petition, or recommend that the petition be dismissed, without a hearing if after his investigation, he found that "the petition was clearly inappropriate" or there was "no reasonable cause" to believe that a question of representation existed. In Illinois Council of Police, the Board adopted the ALJ's recommendation and dismissed a union's petition to sever a group of peace officers from an existing bargaining unit made up of both peace officers and nonpeace employees. This court determined that the Board's finding that the union failed to provide sufficient factual information to meet the requirements of the traditional severance test was not clearly erroneous and affirmed the Board's denial of the petition without an evidentiary hearing. Illinois Council of Police, 387 Ill. App. 3d at 667-69 Similarly, in this case, section 1210.100(b)(7) of title 80 of the Administrative Code (80 Ill. Adm. Code §1210.100(b)(7)(B), amended at 28 Ill. Reg. 4192, eff. February 19, 2004 ) vested the Executive Director with express authority to certify a union without a hearing where there were "no unit appropriateness or exclusion issues, or any other issues necessitating a hearing." The City, nonetheless, argues that the Board's procedure was improper because sections 5(f) and 5(h) of the Act preclude the Board from delegating this decision to the Executive Director. We find

the City's argument unconvincing.

Section 5(f) of the Act provides:

"In order to accomplish the objectives and carry out the duties prescribed by this Act, *a panel or its authorized designees* may hold elections to determine whether a labor organization has majority status; investigate and attempt to resolve or settle charges of unfair labor practices; hold hearings in order to carry out its functions; develop and effectuate appropriate impasse resolution procedures for purposes of resolving labor disputes; require the appearance of witnesses and the production of evidence on any matter under inquiry; and administer oaths and affirmations. The panels shall sign and report in full an opinion in every case which they decide." (Emphasis added.) 5 ILCS 315/5(f) (West 2006).

Section 5(h) of the Act provides:

"Each panel shall exercise general supervision over all attorneys which it employs and over the other persons employed to provide necessary support services for such attorneys. The panels shall have final authority in respect to complaints brought pursuant to this Act." 5 ILCS 315/5(h) (West Supp. 2007).

The City argues that under section 5(f), the Board was prohibited from allowing the Executive Director to issue the certification order in this case because it is not one of the functions listed to be carried out by "authorized designees." However, section 5(g) specifically allows the Board to "prescribe the duties and qualifications" of the Executive Director. 5 ILCS 315/5(g) (West Supp. 2007). Therefore, this court cannot find the list set forth in section 5(f) was intended as an

1-08-2566

exhaustive list where section 5(g) permits the Board to delegate other duties to the Executive Director. See <u>Weather-Tite, Inc. v. University of St. Francis</u>, 233 Ill. 2d 385, 389 (2009) (statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous).

The City lastly argues that the Board's procedure allowing the Executive Director to certify the Teamsters as the exclusive representative of the petitioned-for unit without a hearing violated sections 10-45 and 10-50 of the Illinois Administrative Procedure Act (Procedure Act) (5 ILCS 100/10-45, 10-50 (West 2006)). Section 10-45 provides:

> "Except where otherwise expressly provided by law, when in a *contested case* a majority of the officials of the agency who are to render the final decision has not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency, shall not be made until a proposal for decision is served upon the parties and an opportunity is afforded to each party adversely affected to file exceptions and to present a brief and, if the agency so permits, oral argument to the agency officials who are to render the decision. The proposal for decision shall contain a statement of the reasons therefor and of each issue or fact or law necessary to the proposed decision and shall be prepared by the persons who conducted the hearing or one who has read the record." (Emphasis added.) 5 ILCS 100/10-45 (West 2006).

Section 10-50 provides, in relevant part:

> "A final decision or order adverse to a party (other than the agency) in a *contested case* shall be in writing or stated in the record. A final decision shall include findings of

-22-

fact and conclusions of law, separately stated." (Emphasis added.) 5 ILCS 100/10-50 (West 2006).

The City, relying on these provisions, maintains that because this was a contested case, sections 10-45 and 10-50 of the Procedure Act required that a proposed decision be issued, along with an opportunity to file exceptions with the Local Panel and a final decision containing findings of fact and conclusions of law.

Section 1-30 of the Procedure Act defines a "contested case" as "an adjudicatory proceeding *** in which the individual legal rights, duties, or privileges of a party are required by law to be determined by an agency only after an opportunity for a hearing." 5 ILCS 100/1-30 (West 2006). As previously explained, the City was not entitled to a hearing on the present representation petition where the Executive Director's determination that there were no appropriateness issues warranting a hearing was not clearly erroneous. As such, this was not a "contested case" as defined by the Procedure Act, which would implicate the requirements of sections 10-45 and 10-50 in this case.

## III. CONCLUSION

For the above reasons, we affirm the Board's decision and order.

Affirmed.

MURPHY, P.J. and COLEMAN, J., concur.