SECOND DIVISION

Nos. 1-09-1859 and 1-09-1860
(Consolidated)

| | | |
|---|---|---|
| ILLINOIS COUNCIL OF POLICE, | ) | Appeal from the |
| | ) | Illinois Labor Relations |
| Petitioner-Appellee and Cross-Appellant | ) | Board - Local Panel |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL, | ) | No.  L-RC-07-032 |
| | ) | |
| Respondent-Appellee | ) | |
| | ) | |
| (The City of Chicago, | ) | |
| | ) | |
| Respondent-Appellant and Cross-Appellee). | ) | |

JUSTICE KARNEZIS delivered the opinion of the court:

The Illinois Council of Police (ICOP), a labor union, filed a majority interest

representation petition with the Illinois Labor Relations Board, Local Panel (the Board),

seeking certification as the exclusive representative of all aviation security sergeants

(sergeants) employed by the City of Chicago (the City).   Over the City's objections that

a new, stand-alone bargaining unit consisting solely of sergeants was inappropriate

under the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2008)) (the

Act), the Board granted the petition.  ICOP and the City each filed a petition for direct

review of the Board's decision with this court.  We consolidated the appeals.  In appeal

No. 1-09-1859, ICOP argues the Board, in certifying the proposed bargaining unit, erred in finding that the sergeants were not "peace officers" within the meaning of the Act. In appeal No. 1-09-1860, the City argues the Board erred in certifying the sergeants' stand-alone unit as an appropriate bargaining unit. We affirm the Board's decision in appeal No. 1-09-1960 and dismiss appeal No. 1-09-1859 for lack of jurisdiction.

## Background

The City of Chicago employs approximately 38,000 employees, of whom some 12% or 5,000 are not unionized. Among the nonunionized employees are approximately 30 employees classified as "aviation security sergeants." The sergeants work in the City's department of aviation (department), which also employs "aviation security officers" (ASOs) and aviation security shift supervisors (lieutenants).[1] The sergeants and lieutenants have never been represented by a labor union. The ASOs have been part of a collective bargaining unit, known as Unit II, since 1984. Unit II is comprised of approximately 3,000 nonsworn public safety employees, such as crossing guards, 911 operators and animal control officers. The ASOs are represented by the Service Employees International Union, Local 73 (Local 73), one of the joint representatives of Unit II. We granted Local 73's motion to file a brief *amicus curiae* in support of the City's argument.

---

[1] In 2006, ASOs, sergeants and lieutenants were issued badges identifying them as "department of aviation police" officers, sergeants and lieutenants. It is undisputed that no department by that name exists and the actual job titles and duties for these employees were not changed at that time.

The ASOs, sergeants and lieutenants provide airport security at Midway and O'Hare airports, which are owned and run by the department. The job progression within the aviation security ranks is generally from ASO to sergeant to lieutenant. ASOs and sergeants are required to be certified as law enforcement officers, with 400 hours of law enforcement training, including 40 hours of firearms training. The department provides additional training specific to airport security.

Sergeants supervise the ASOs. A cadre of ASOs is assigned to each sergeant. Sergeants call roll for their assigned ASOs, inspect their uniforms, make announcements to them, assign the ASOs their work stations, monitor the ASOs during the day, spot-check that the ASOs are where they are supposed to be, correct their behavior and provide their training. ASOs and sergeants can issue reports and citations and make arrests for any violations of the law but only while in uniform, on duty, on airport property. They work together with Chicago police department officers assigned to the airports. Unlike the police officers, aviation security personnel do not carry firearms. The lieutenants supervise both the sergeants and the ASOs. Although sergeants may start a disciplinary action against an ASO, only the lieutenants may enforce the department's disciplinary rules and administer corrective action.

In June 2007, ICOP filed a petition with the Board seeking certification as the exclusive bargaining representative for the sergeants and the lieutenants in a new, stand-alone bargaining unit. The City objected, arguing that (a) the sergeants and lieutenants were supervisors or managers under the Act and, therefore, could not

unionize without the City's consent;[2] and (b) the proposed unit was inappropriate under the Act and Unit II was the only appropriate unit. Subsequently, the City stipulated that the sergeants were "public employees" under the Act, *i.e.*, not supervisors or managers and, therefore, eligible for collective bargaining. ICOP amended its petition, limiting its certification request to the sergeants.

Among other arguments, ICOP asserted a stand-alone unit for the sergeants was appropriate because the sergeants were "peace officers" within the meaning of section 3(k) of the Act (5 ILCS 315/3(k) (West 2008)). Pursuant to section 3(s)(1) of the Act, a bargaining unit containing peace officers cannot contain any employee who is not a peace officer unless agreed to by the employer and the labor organization(s) involved. 5 ILCS 315/3(s)(1) (West 2008). The administrative law judge (ALJ) hearing ICOP's petition found the question of whether sergeants were peace officers had already been resolved between the parties at bar in a previous Board decision, *Illinois Council of Police & Sheriffs, Local 7*, 18 Pub. Employee Rep. (Ill.) par. 3024, No. L-RC-01-010 (ILRB-Local Panel, June 20, 2002), in which the Board found the sergeants were not peace officers under the Act and a stand-alone bargaining unit for sergeants was not appropriate. Although the ALJ deemed the determination that sergeants are not peace officers to be still binding on the parties, he allowed ICOP to make a limited offer of proof on the issue. He allowed full proof and argument on the general question of the appropriateness of a stand-alone unit for the sergeants.

---

[2] See 5 ILCS 315/3(n), (r), (s)(2) (West 2008).

Following a two-day hearing, the ALJ issued a recommended decision and order finding a stand-alone bargaining unit for the sergeants was appropriate under the Act. The ALJ first concluded sergeants could not form a stand-alone unit on the basis of being peace officers because, as had the Board in 2002, ASOs, sergeants and lieutenants do not meet the requirements for "peace officer" under the Act. The ALJ then found that the passage of time and the City's and Local 73's inaction in petitioning to have the sergeants either included in Unit II or declared supervisory employees had created a situation where the sergeants were an unrepresented "residual or fringe group" of employees that could now form its own bargaining unit. The ALJ also noted that the balance of the factors required by section 9(b) of the Act (5 ILCS 315/9(b) (West 2008)) for determination of the appropriateness of a bargaining unit had shifted since 2002 and a stand-alone unit was appropriate.

The Board adopted the ALJ's recommendation that the stand-alone unit for sergeants be deemed appropriate for certification. It found the ALJ properly considered the passage of time in deciding the petition. The Board noted that, although the City showed that adding the sergeants to Unit II would be appropriate, the City had presented no evidence to show that a stand-alone unit for sergeants was inappropriate. It stated, "[t]he proper inquiry is not whether the petitioned-for unit or the unit urged by the employer is more appropriate, but rather whether the petitioned-for unit is *an* appropriate unit. (Emphasis in original.) The Union need not petition for the most appropriate unit, but rather, an appropriate unit." The Board also adopted the ALJ's

5

recommendation that the sergeants not be designated as "peace officers."

Both ICOP and the City timely appealed the Board's decision on direct review to this court pursuant to section 9(i) of the Act (5 ILCS 315/9(i) (West 2008)). We consolidated the appeals.

Analysis

Appeal No. 1-09-1860

Jurisdiction over City's Appeal

ICOP and the City each filed a petition for direct review of the Board's decision with this court. ICOP filed its petition approximately 90 minutes before the City filed its own petition. The City did not style its petition as a cross-petition or cross-appeal. ICOP makes the cursory argument that we do not have jurisdiction to consider the City's appeal because the City, as the second petitioner for review in the case, was required by Supreme Court Rule 303(b)(1)(iii) (210 Ill. 2d R. 303(b)(1)(iii)) to file its petition as a cross-appeal and failed to do so.

Rule 303(b)(1)(iii) provides that a notice of appeal "shall be designated 'Notice of Appeal,' 'Joining Prior Appeal,' 'Separate Appeal,' or 'Cross-Appeal,' as appropriate." 210 Ill. 2d R. 303(b)(1)(iii). However, Rule 303(a)(3) provides that "[i]f a timely notice of appeal is filed *and served* by a party, any other party *** may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." (Emphasis added.) 210 Ill. 2d R. 303(a)(3). These appeals were filed 90 minutes apart. When the City filed its petition, it had not yet been served with a copy

6

of ICOP's petition and did not know ICOP had filed its own petition.  Indeed, arguably, since ICOP had been granted the relief it requested, there would be no reason to presume ICOP would file a petition at all.

We will not deny review of a petition not properly titled as a cross-petition where the cross-petitioner did not know it was the second party to file.  A notice of appeal is to be liberally construed as a whole.  *Ruane v. Amore*, 287 Ill. App. 3d 465, 470 (1997). The purpose of a notice of appeal is to inform the party prevailing in the trial court that the opposing party seeks review of the judgment.  *Ruane*, 287 Ill. App. 3d at 470. Where the notice sufficiently sets forth the judgment complained of and the relief sought, mere formal defects will not deprive this court of jurisdiction.  *Ruane*, 287 Ill. App. 3d at 470.  There being no dispute that the City's petition is more than adequate to inform ICOP and the Board of the judgment it was appealing, the fact that the petition is not termed as a cross-petition does not deprive this court of jurisdiction.  Further, pursuant to this court's order, the parties worked out a briefing schedule, agreeing that the City would file its brief first (*i.e.*, as the appellant) and  ICOP would filed its response and argument second (*i.e.*, as the cross-appellant).  This argument has been settled.

Certification of Bargaining Unit

The City argues that a bargaining unit composed solely of sergeants is not appropriate under the Act and the Board's decision certifying the unit was, therefore, clearly erroneous and should be reversed.  The question of whether a bargaining unit is appropriate requires an examination of the legal effect of a given set of facts,

7

presenting a mixed question of law and fact. *City of Chicago v. Illinois Labor Relations Board, Local Panel*, 396 Ill. App. 3d 61, 66-67 (2009) (hereinafter *City of Chicago (Public Health Nurses)*); *County of Cook (Provident Hospital) v. Illinois Labor Relations Board, Local Panel*, 369 Ill. App. 3d 112, 118 (2006). We review such questions under the clearly erroneous standard, upholding the Board's resolution of such questions if the resolution is " ' "reasonable, consistent with labor law and based on findings supported by substantial evidence." ' [Citation.]" *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 67.

Section 9(b) of the Act provides:

"The Board shall decide in each case, in order to assure public employees the fullest freedom in exercising the rights guaranteed by this Act, a unit appropriate for the purpose of collective bargaining, based upon but not limited to such factors as: historical pattern of recognition; community of interest including employee skills and functions; degree of functional integration; interchangeability and contact among employees; fragmentation of employee groups; common supervision, wages, hours and other working conditions of the employees involved; and the desires of the employees. For purposes of this subsection, fragmentation shall not be the sole or predominant factor used by the Board in determining an appropriate bargaining unit." 5 ILCS 315/9(b) (West 2008).

The City first argues the parties are bound by the earlier 2002 Board decision,

8

*Illinois Council of Police & Sheriffs, Local 7*, 18 Pub. Employee Rep. (Ill.) par. 3024, which resolved the exact same question between these exact same parties in favor of the City and against ICOP, finding a stand-alone bargaining unit for sergeants inappropriate.  In *Illinois Council of Police & Sheriffs, Local 7*, as here, ICOP petitioned the Board to be the exclusive representative of the sergeants for the purpose of collective bargaining.  The ALJ recommended denial of the petition, finding the stand-alone unit for sergeants inappropriate.  Neither ICOP nor the City filed exceptions to the ALJ's recommended decision.  The Board accepted the ALJ's recommendation, found the sergeants' unit inappropriate and denied the petition.  The Board stated its decision was final and binding on the parties.  Where a party fails to file exceptions to a recommended decision and the Board declares the decision final and binding, the party is bound by the decision "unless and until either factual or legal circumstances significantly change." *International Brotherhood of Teamsters, Local No. 916*, 16 Pub. Employee Rep. (Ill.) par. 2021, No. S-RC-00-034 (ILRB-State Panel, April 4, 2000).

Here, the issue of whether a bargaining unit limited to sergeants is an appropriate bargaining unit was litigated and decided in 2002.  ICOP did not file exceptions to the ALJ's recommended decision in that case nor appeal the Board's decision accepting the ALJ's recommendation.  ICOP is, therefore, presumptively bound by the 2002 decision and, barring a significant legal or factual change since 2002, the Board would dismiss its petition seeking the same certification of a sergeants' unit as in 2002.  *Illinois Council of Police*, 22 Pub. Employee Rep. (Ill.) par. 130, No. S-

RC-06-179 (ILRB-State Panel, October 3, 2006); *International Brotherhood of Teamsters, Local No. 916*, 16 Pub. Employee Rep. (Ill.) par. 2021.  However, as the Board noted in its decision, "the passage of time may alter the balance of the appropriate unit factors" set forth in section 9(b).  Accordingly, revisiting the appropriateness of the unit some seven years after the initial decision was warranted, especially given, as will be discussed below, the Board's softening of its stance regarding the fragmentation of bargaining units.[3]

The City next argues that the sergeants' bargaining unit is inappropriate under section 9(b) because of the City's historical pattern of collective bargaining, the community of interest between the sergeants and the ASOs already in Unit II and the Board's policy against fragmentation of bargaining units. Citing a plethora of earlier Board decisions, the City asserts that the Board improperly went against its own long-standing preference for large, broad-based bargaining units when it certified the sergeants as a stand-alone unit, thereby unduly fragmenting the City's bargaining process without adequate explanation.

There is no dispute that, since implementation of the Act in 1984, the Board's long-standing preference has been for large, broad/functionally based bargaining units in order "to facilitate stability in labor relations as well as efficiency and economy in

---

[3]  The Board determined that the 2002 decision finding that the sergeants were not peace officers was binding on the parties because, unlike the section 9(b) factors, the standards or tests for determining whether a person was a peace officer had become fixed under the Act.

public bargaining and administration." *Salaried Employees of North America*, 3 Pub. Employee Rep. (Ill.) par. 3026, Nos. S-L-RC-87-04, L-UC-87-06, L-UC-87-07, L-UC-87-08 (ILRB-Local Panel, July 21, 1987). The Board's certification of a small 30-sergeant unit certainly does not fit in with that preference. As the City points out, when an agency "drastically departs from past practices, its decisions are entitled to less deference." *Lakehead Pipeline Co. v. Illinois Commerce Comm'n*, 296 Ill. App. 3d 942, 956 (1998). "[S]udden unexplained changes" in an agency's policy or practice "have often been considered arbitrary." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 506 (1988). However, an administrative agency is not absolutely bound by its prior determinations. *Citizens Utilities Co. of Illinois v. Illinois Commerce Comm'n*, 153 Ill. App. 3d 28, 32 (1987). It may adjust its standards and policies in light of experience, as long as the adjustments are not arbitrary or capricious. *Citizens Utilities Co. of Illinois,* 153 Ill. App. 3d at 32.

Over the past three years, the Board has begun reconsidering its preference for large units and begun certifying small, stand-alone units. *International Brotherhood of Teamsters*, 23 Pub. Employee Rep. (Ill.) par. 172, No. L-RC-06-008 (ILRB-Local Panel, October 16, 2007) (hereinafter *SPCOs)* (Board certified unit of 23 supervising police communications operators) (*SPCOs*); *State v. State*, 388 Ill. App. 3d 319 (2009) (affirming decision of the Board in *Illinois Nurses Ass'n*, 23 Pub. Employee Rep. (Ill.) par. 173, No. S-RC-07-036 (ILRB-State Panel, October 30, 2007) (certifying a unit of six Bureau of Administrative Litigation staff attorneys); *City of Chicago (Public Health*

*Nurses)*, 396 Ill. App. 3d at 67 (affirming Board decision certifying unit of 34 public health nurses).

In 2007, in *SPCOs*, the Board explained its decision to depart from its long-standing preference for large units and certify the small unit of SPCOs, who had never been represented for collective bargaining purposes, as follows:

> "This case pits large functionally-based units and the City's administrative efficiency against the right of the petitioned-for employees to engage in collective bargaining. As noted above, for the past two decades, the Board's standard solution in these situations has been to favor the large, functionally-based units, and we think that for most of that time, this was the proper course, as to do otherwise would have led to a proliferation of bargaining units, balkanizing the City's workforce, ultimately resulting in the undermining of collective bargaining. *We regularly reexamine this policy, however, as it must be harmonized with the rights created by the Act.* For example, in this case, dismissal of the [union's] petition will result in the petitioned-for employees' rights under the Act continuing to be dependent, as they have been for the approximately twelve years the SPCO title has existed, on the Unit II coalition seeking to represent it. The Board's preference for large, functionally-based units when most of the City's workforce was unorganized, was in keeping with the judicious administration of the Act, however, over time, as the Board has often noted, and the record reflects, most of the City's workforce eligible to be organized is in fact, organized.

Yet, small pockets of employees, like those petitioned-for herein, continue to exist, and their right to organize should not remain entirely under the control of a third party, in this case the Unit II coalition, when the circumstances that originally dictated such a policy have changed with time." (Emphasis added.) *SPCOs*, 23 Pub. Employee Rep. (Ill.) par. 172, at 734.

In *State v. State*, in granting a petition for certification of a tiny six-person unit, the Board had stated

" 'The preference for large, functionally-based [ *sic* ] units was, and continues to be, an important consideration, yet[,] [in some of our previous decisions,] excessive concern with avoiding fragmentation and promoting economy and efficiency in public bargaining and contract administration consumed not only the employees' right to organize, but also the criteria set forth in [s]ection 9(b) [(5 ILCS 315/9(b) (West Supp. 2007))]. The Act demands that we balance between these extremes so as to avoid regularly and completely depriving public employees of their right granted therein. After reviewing the petitioned-for unit in light of the considerations set forth in [s]ection 9(b), [we find that] only the fragmentation factor favors dismissal, and by itself, it is insufficient to deny the [union's] petition.' " *State*, 388 Ill. App. 3d at 328-29.

The court noted the Board had previously held that fragmentation of a classification raises a presumption that the proposed bargaining unit is inappropriate. *State*, 388 Ill. App. 3d at 334, citing *International Brotherhood of Electrical Workers, Local No. 1701*,

1 Pub. Employee Rep. (Ill.) par. 2003, Nos. S-RC-9, S-RC-17, at 7 (ILRB-State Panel, April 26, 1985). However, the court found the " 'presumption of inappropriateness' is difficult to square with section 9(b), which says: '[F]ragmentation shall not be the sole or predominant factor used by the Board in determining the appropriate bargaining unit.' " *State*, 388 Ill. App. 3d at 335, quoting 5 ILCS 315/9(b) (West Supp. 2007). The court found that "[t]reating fragmentation as presumptively decisive seems to elevate it to [an impermissible] predominance" and noted that the Board in its decision in the case before the court seemed to recognize the problem. *State*, 388 Ill. App. 3d at 335.

Most recently, in *City of Chicago (Public Health Nurses)*, the court noted the conclusion of the Board's executive director that, following *SPCOs* and under section 9(b), the fragmentation factor by itself was insufficient to deny a petition seeking unit certification for a small subset of nurses who had never been represented. *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 69. The Director determined that, although placement of the nurses in an already existing bargaining unit might be appropriate, the union representative for that unit had failed to seek such representation and the issue of the appropriateness of the existing unit was, therefore irrelevant. *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 69-70. He recognized that, while the fragmentation factor favored the City's position that a stand-alone nurses unit was not appropriate, it was not the sole factor in determining whether a petitioned-for unit is appropriate. *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 70. In light of the pronouncements of the Board in *SPCOs*, *Illinois Nurses Ass'n* and its own case and

14

of the court in *State v. State* regarding the improper elevation of section 9(b)'s

fragmentation factor, the *City of Chicago (Public Health Nurses)* court went on to

consider the other factors set forth in section 9(b) to determine whether the Board's

certification of the nurses unit was clearly erroneous. It found it was not.

The above-cited decisions clearly show that the Board's decisions to certify

smaller units were anything but arbitrary and capricious. The Board made the decisions

consciously and with clear consideration of the past preference for larger bargaining

units. The Board recognized that, although the elevation of the fragmentation factor

may have had a place when the Act first came into effect, time and the changes it has

wrought in the City's bargaining landscape meant that fragmentation, more so than

ever, should not be the predominant factor in an appropriateness determination under

section 9(b).

Following *SPCOs,* among other decisions, the Board here came to the same,

well-considered conclusion, stating:

"although the preference for large functionally-based unit was, and continues to

be, an important consideration, as this Board has previously observed and the

foregoing cases illustrated, excessive concern with avoiding fragmentation and

promoting economy and efficiency in public bargaining and contract

administration consumed not only the employee's right to organize, but also the

criteria set forth in section 9(b)."

The Board's explanation of why it veered from the preference for large, broad-based

15

bargaining units was more than adequate to show that its reasons for doing so were well considered and reasonable.

Looking to the other factors set forth in section 9(b), the sergeants have never been represented by a union so the City, therefore, has no historical pattern of recognizing the sergeants in a collective bargaining context. *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 70, citing *Will County State's Attorney v. Illinois State Labor Relations Board*, 229 Ill. App. 3d 895, 900 (1992). There is clearly a community of interest between the sergeants, including their skills, training, working conditions and job requirements, and no party asserts otherwise. As to the sergeants' desires, as shown by their vote, they want to be represented by ICOP in a stand-alone unit. Based on these factors, it would appear that the Board's certification of the sergeants unit as appropriate was not clearly erroneous.

The City asserts that the Board never addressed the City's argument that the petitioned-for bargaining unit was not an appropriate unit under the Act. Since the Board's finding that the unit was appropriate necessarily entails a finding that the unit was not inappropriate, we will not address this assertion. Moreover, even if the stand-alone unit for the sergeants had not been appropriate, it is not the case that sergeants must automatically be placed in Unit II as the City seems to assert. There is little question that Unit II would be an appropriate bargaining unit for the sergeants given the commonalities and community of interest between the sergeants and the ASOs already in Unit II. But the record shows the sergeants do not want to be in Unit II and the

unions representing Unit II have never moved to represent the sergeants in the more than 20 years since the formation of Unit II.  "[I]t is 'fundamentally at odds with the Act itself to place the petitioned-for employees' right to organize completely under the control of a third party.' " *State*, 388 Ill. App. 3d  at 338, quoting the Board in *Illinois Nurses Ass'n*, 23 Pub. Employee Rep. (Ill.) par. 173, at 743.  Further, " '[s]ection 9(b) of the Act does not require that a proposed unit be the most appropriate or the only appropriate unit.' "  *City of Chicago (Public Health Nurses)*, 396 Ill. App. 3d at 67, quoting *County of Cook (Provident Hospital)*, 369 Ill. App. 3d at 118.  The question presented by ICOP's petition was whether a stand-alone unit was appropriate for the sergeants, not whether the sergeants should be placed in Unit II.  The Board resolved this question and we affirm its decision as reasonable, consistent with labor law and supported by the evidence.

Appeal No. 1-09-1859

Peace Officers

ICOP's argument is addressed to the Board's determination that the sergeants are not "peace officers" within the meaning of section 3(k) of the Act.  "A bargaining unit determined by the Board to contain peace officers shall contain no employees other than peace officers unless otherwise agreed to by the employer and the labor organization or labor organizations involved."  5 ILCS 315/3(s)(1) (West 2008).  Accordingly, ICOP had argued to the Board that the sergeants were peace officers and, therefore, (a) they could not be represented by Unit II because the employees in Unit II

17

are not peace officers and (b) a stand-alone bargaining unit was required. We agree with the City and the Board that we do not have jurisdiction to consider this question.

Only "any person aggrieved" by a final order the Board may petition for review of a Board decision. 5 ILCS 315/9(i) (West 2008). A party who has obtained all that has been asked for in the underlying proceeding has no standing to appeal. *Geer v. Kadera*, 173 Ill. 2d 398, 413-14 (1996). Although ICOP may not agree with the Board's "peace officer" finding, ICOP did receive the relief it requested from the Board: certification of a stand-alone bargaining unit for the sergeants. We have affirmed this decision. Accordingly, ICOP's "win" before the Board stands. Because ICOP received the relief it requested, its appeal must be dismissed. *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007). We note that, although we may generally affirm on any basis in the record, a defendant need not file a cross-appeal to urge an alternative reason for affirming. *Evans*, 373 Ill. App. 3d at 418. And, because we do affirm the Board, we need not review the alternate basis for relief ICOP presented to the Board. Appeal No. 1-09-1859 is dismissed.

For the reasons stated above, in appeal No. 1-09-1860, we affirm the decision of the Board granting certification to ICOP as the exclusive representative of the sergeants in a new bargaining unit. We dismiss appeal No. 1-09-1859.

No. 1-09-1859, Dismissed.

No. 1-09-1860, Affirmed.

THEIS, P.J., and CUNNINGHAM, J., concur.

1-09-1859, 1-09-1860

1-09-1859, 1-09-1860

ILLINOIS COUNCIL OF POLICE,

    Petitioner-Appellee and Cross-Appellant

v.

ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL,

    Respondent-Appellee

(The City of Chicago, Respondent-Appellant and Cross-Appellee).

Nos. 1-09-1859)  1-09-1860)

Appellate Court of Illinois
First District, Second Division

September 30, 2010

JUSTICE KARNEZIS delivered the opinion of the court.

THEIS, P.J., and CUNNINGHAM, J., concur.

Appeal from the Illinois Labor Relations Board - Local Panel

For APPELLANT and CROSS-APPELLEE THE CITY OF CHICAGO:  Mara S. Georges, Corporation Counsel of the City of Chicago (Deputy Corporation Counsel Benna Ruth Solomon, Chief Assistant Corporation Counsel Myriam Zreczny Kasper, Assistant Corporation Counsel Suzanne M. Loose and Special Assistant Corporation Counsel Michael N. Loquercia, of counsel)

For *AMICUS CURIAE* SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73: Tyson Roan, Counsel, Service Employees International Union, Local 73, of Chicago

For APPELLEE and CROSS-APPELLANT ILLINOIS COUNCIL OF POLICE:  Noel T.

Wroblewski, General Counsel, Illinois Council of Police, of Elmhurst, Illinois

For APPELLEE ILLINOIS LABOR RELATIONS BOARD, LOCAL PANEL:  Lisa Madigan, Attorney General of the State of Illinois, and Michael A. Scodro, Solicitor General (Assistant Attorney General Carl J. Elitz, of counsel).